Judge Terry J. HATTER, Jr., Mary Martin Arceneaux, on behalf of the late Judge George Arceneaux, Jr.; Judge Peter H. Beer; Judge Dudley H. Bowen, Jr.; Dolores Lee Burciaga, executrix of the estate of Chief Judge Juan G. Burciaga, deceased; Judge A.J. McNamara; Judge Harry Pregerson; Judge Raul A. Ramirez; Judge Norman C. Roettger, Jr.; Chief Judge Thomas A. Wiseman, Jr.; Chief Judge Terence T. Evans; Judge Henry A. Mentz, Jr.; Chief Judge Wilbur D. Owens, Jr.; Judge Henry R. Wilhoit, Jr.; Judge Harold A. Baker and Chief Judge Michael M. Mihm, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 705–89 C.

United States Court of Federal Claims.

June 6, 1997.

Steven S. Rosenthal, with whom were W. Stephen Smith, Joyce H. Jones and Sheryl J. Lincoln, Washington, DC, for plaintiffs.

Jeanne E. Davidson, with whom were Assistant Attorney General Frank W. Hunger and David M. Cohen, Washington, DC, for defendant. Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, Department of Justice, of counsel.

## OPINION and ORDER

TURNER, Judge.

This opinion addresses all damages issues related to claims by 16 federal judges that their compensation was unlawfully diminished by imposition of Social Security taxes. There are no material facts in dispute.[1]

For reasons stated below, we conclude that eight of the plaintiffs are entitled to refunds of a portion of Social Security taxes withheld from salary in January 1984, together with compound interest. We further conclude, however, that any additional recovery is either barred by the applicable statute of limitations or offset by salary increases and that, consequently, the bulk of plaintiffs' claims for damages must be denied.

1. Procedurally, the case stands on three dispositive motions: plaintiffs' motion filed November 12, 1996 for summary judgment and defendant's pair of motions filed December 18, 1996, one a cross-motion for summary judgment and the other a motion to dismiss-in-part on limitations grounds. Oral argument was conducted on March 7, 1997. The order in Part IX of this opinion resolves all three dispositive motions.

2. In two instances, a current plaintiff is the legal successor in interest to an original plaintiff. Further, Judge Raul A. Ramirez resigned effective as of January 1, 1990.

## I

Plaintiffs are 16 federal district and circuit judges[2] who took office prior to January 1, 1983. On that date, all federal judges for the first time became subject to the Hospital Insurance (Medicare) (hereafter HI) portion of the Social Security tax.[3] Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97–248, § 278(a), 96 Stat. 324, 559 (1982) (codified as amended at 26 U.S.C. (I.R.C.) § 3121(u) (1988)). One year later, judges became subject to the Old Age Survivors and Disability Insurance (hereafter OASDI) portion of the Social Security tax, and since January 1, 1984, all federal judges have been fully subject to Social Security taxes.[4] Social Security Amendments of 1983, Pub.L. No. 98–21, § 101(a)(1), (b)(1) and (d), 97 Stat. 65, 68, 69 (codified as amended at 26 U.S.C. (I.R.C.) § 3121(b)(5)(E) (1988) and 42 U.S.C. § 410(a)(5)(E) (1988)). Social Security taxes have been duly withheld from plaintiffs' monthly compensation since the effective dates of these acts.

Since the original plaintiffs filed their complaint on December 29, 1989, there have been four prior published opinions regarding this case. Chronologically, they are *Hatter v. United States*, 21 Cl.Ct. 786 (1990) (*Hatter I*), *Hatter v. United States*, 953 F.2d 626 (Fed. Cir.1992) (*Hatter II*), *Hatter v. United States*, 31 Fed.Cl. 436 (1994) (*Hatter III*), and *Hatter v. United States*, 64 F.3d 647 (Fed.Cir.1995) (*Hatter IV*), aff'd by a divided court, —— U.S. ——, 117 S.Ct. 39, 136 L.Ed.2d 3 (1996).

In *Hatter I*, this court dismissed plaintiffs' claim for lack of jurisdiction, concluding that

3. The Hospital Insurance tax (HI) funds Medicare Part A and is imposed upon employees by 26 U.S.C. § 3101(b). During 1983 the HI tax was 1.3 percent of the first $35,700 of compensation. Def. Br. (12/18/96), p. 7.

4. Pursuant to 26 U.S.C. §§ 3101 and 3121(a) and section 230 of the Social Security Act (42 U.S.C. § 430), the 1984 OASDI tax was 5.4 percent of the first $37,800 of compensation.

the plaintiffs were seeking a tax refund and had failed to observe statutory prerequisites to suit. *Hatter I*, 21 Cl.Ct. at 789. The Federal Circuit reversed, holding that plaintiffs were not seeking tax refunds, but rather were asserting damage claims arising directly under the Constitution which mandates the payment of money. *Hatter II*, 953 F.2d at 630. The case was remanded to this court for a determination on the merits.

In *Hatter III*, 31 Fed.Cl. at 447, this court dismissed plaintiffs' claims on the merits. We held that although Social Security taxes caused a reduction in the judges' take-home pay, imposition of the taxes did not violate the Compensation Clause of the Constitution, since the Social Security taxes imposed were nondiscriminatory and generally applicable to the public.

The Federal Circuit reversed, holding that the imposition of Social Security taxes on sitting judges diminished their compensation. *Hatter IV*, 64 F.3d at 652–53. The Federal Circuit remanded the case for award of "tax refunds or recoveries for the sums improperly withheld from the claimants' salaries." *Id.* at 653.

## II

In this damages proceeding, plaintiffs seek recovery of the total amount of HI and OAS-DI taxes withheld from their salaries from 1983 to the present, plus interest compounded annually. In total, plaintiffs request an award in the amount of $1,059,675.59 (as of January 15, 1997).

Plaintiffs take the position that the court's task is limited to calculating the precise amounts of HI and OASDI taxes withheld from their salaries and making an award of those amounts with compound interest. Plaintiffs say with respect to principal that the remand directions of the Federal Circuit

in *Hatter IV* are not subject to any other reasonable interpretation.

Defendant argues that all plaintiffs' claims are time-barred to the extent they seek to recover for any amounts withheld prior to January 1, 1984. Similarly, defendant argues that claims by those judges added to the case in 1992 are time-barred at least for years 1984, 1985, and part of 1986 because those claims had accrued more than six years before these judges or new claims were added to the current action.

Defendant further argues that salary increases beginning as of January 1, 1984 more than offset the amount of any Social Security tax deductions from the plaintiffs' salaries for services during and after 1984. Finally, defendant asserts that the plaintiffs are not entitled to an award of interest on any recovery of principal.

## III

The history of claim presentation and appearance of plaintiffs in this litigation provides a useful beginning for resolution of damages issues.

## A

The original complaint was filed on December 29, 1989 by ten judges. The complaint was specifically limited to OASDI taxes withheld on and after January 1, 1984. The complaint did not object to or otherwise address imposition of HI taxes which had become effective on January 1, 1983 and did not request any damages for taxes withheld during 1983.

After the remand instructing this court to resolve the merits of the case, *Hatter II*, 953 F.2d at 630, a First Amended Complaint was filed on June 25, 1992. This pleading, submitted more than nine years after imposition of HI taxes, added four new plaintiffs [5] and set forth an alternative claim for tax refunds but, like the original complaint, expressed no

---

5. After the first judgment by this court dismissing the claims for failure of jurisdictional prerequisites, *see Hatter I*, 21 Cl.Ct. at 789, only eight of the original ten plaintiffs appealed from the judgment, and consequently only eight plaintiffs were

in the case upon the first remand. The First Amended Complaint filed on June 25, 1992 actually added six plaintiffs, but two of them (Judges Bowen and Roettger) were original plaintiffs who had not appealed from the first judgment.

**170**

objection to imposition of HI taxes and made no request for damages suffered in 1983.

A Second Amended Complaint was presented on December 11, 1992 (filed on January 11, 1993). This pleading added two new plaintiffs (bringing the total to the current 16) and, for the first time, asserted a right to damages resulting from imposition of HI taxes on January 1, 1983.[6]

As is clear from the foregoing, all 16 plaintiffs first presented a claim for recovery of HI taxes more than nine (almost ten) years after the tax was imposed. Although the original complaint presented OASDI claims, only eight of the current plaintiffs were in the case on the first remand in 1992. In June 1992, two original plaintiffs reasserted and four new plaintiffs asserted for the first time claims related to OASDI taxes; in December 1992, two additional new plaintiffs asserted for the first time claims related to OASDI taxes.

(For ease of reference, we hereafter designate the eight original plaintiffs who prosecuted the first appeal and were part of the case upon the first remand as the "original" plaintiffs and the remaining eight plaintiffs who first joined or rejoined the suit after the first remand as the "later-filing" plaintiffs.)

**B**

In the remainder of this opinion, we first address the OASDI claims of the "original" plaintiffs.

Thereafter, we address (1) the OASDI claims of the eight "later-filing" plaintiffs and (2) the claims of all plaintiffs based on imposition of HI taxes. Resolution of these claims involves application of statutes of limitations together with related issues including the "relation-back" doctrine and the "continuing claim" doctrine.

Finally, we address the issue of interest on damages awards for Compensation Clause violations.

6. In the original complaint, ¶ 16 at p. 5, and in the First Amended Complaint, ¶ 21 at pp. 5–6, plaintiffs in those pleadings asserted that the imposition of OASDI taxes on January 1, 1984 represented the first time that Social Security deductions were withheld from judges' compensation.

**IV**

In *Hatter IV*, 64 F.3d at 653, the Federal Circuit remanded "for tax refunds or recoveries for the sums improperly withheld from the claimants' salaries." Remand was necessary because "the trial court did not determine whether the Social Security taxes in this case *in fact* diminished the claimants' compensation." *Id.* at 652 (emphasis added).

**A**

At all material times, the salaries of federal judges have been paid in monthly installments as of the first day of each calendar month for services during the preceding calendar month. Hence, the salary payments to plaintiffs on or about January 1, 1984 were for services during December 1983, and OASDI taxes withheld from such salary installment, although assessed with respect to and extracted from salary paid in 1984, had the effect of reducing compensation earned in December 1983.

Defendant concedes, in light of *Hatter IV*, that eight of the plaintiffs [7] are entitled to damages for the amount of OASDI taxes withheld from salary payments made in January 1984 for services in December 1983. That amount is $328.95 for seven of the original plaintiffs who were district judges on January 1, 1984, and $347.85 for the original plaintiff who was a circuit judge on January 1, 1984. Def. Br. (2/25/97), p. 4.

Because no salary increase which first became effective on or after January 1, 1984 was retroactive to December 1983, there has been no possible cure of diminution which occurred with respect to income accrued for December 1983. Therefore, we agree with defendant that the eight plaintiffs indicated are entitled to recover the amount equal to OASDI taxes withheld from salary payments in January 1984.

7. District Judges Hatter, Arceneaux, Beer, Burciaga, McNamara Ramirez and Wiseman (or their successors in interest) and Circuit Judge Pregerson.

We address in Part VIII below plaintiffs' claims of entitlement to interest on damages.

## B

Defendant contends that pay increases in 1984 and subsequent years have offset the diminution of plaintiffs' salaries caused by all OASDI taxes (in fact, all Social Security taxes) withheld from salary payments after January 1, 1984. Even though the Federal Circuit held in *Hatter IV,* 64 F.3d at 652, that "the Social Security taxes diminished the claimants' salaries by specific amounts," it did not have occasion to consider whether a simultaneous or subsequent retroactive increase could offset or cure the diminution in Article III compensation [8] resulting from the Social Security tax deductions. The issue is one of first impression.

In resolving the issue, we start with a straightforward application of arithmetic and logic to the question whether a simultaneous or subsequent pay raise can cure prospectively any diminution resulting from the imposition of a new tax. We then apply two concepts gleaned from legislation and case law, to wit, (1) that taxation of judges' compensation does not, per se, constitute an unlawful diminution, rather it is imposition of a new tax on sitting judges which results in a prohibited diminution, and (2) that Congress has no enforceable duty to raise the salaries of judges, rather any increase is a matter of legislative discretion.

### 1

At the outset, one would suppose that there could be no dispute that if, simultaneously with the imposition of a new tax, Congress granted an increase in salary which equaled or exceeded the tax, no diminution in the level of compensation just prior to imposition of the tax would have occurred. The mathematical result is the same as if the judge received either no salary increase or an increase in the amount of any excess of the raise over the tax. An increase subsequent to imposition of a new tax would have a similar effect prospectively.

8. The Compensation Clause in the United States Constitution provides: "The Judges, both of the supreme and inferior Courts, shall hold their offices during good Behaviour, and shall, at stat-

### 2

■ Case law applying the Compensation Clause, U.S. Const. art. III, § 1, makes plain that Article III does not prohibit taxation of judges per se but only imposition of new taxes on sitting judges, *Hatter IV,* 64 F.3d at 650.

In *O'Malley v. Woodrough,* 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939), the Supreme Court held that a federal circuit judge who was appointed after federal income taxes had become effective may be taxed by Congress, and that such taxation did not violate the Compensation Clause. *O'Malley,* 307 U.S. at 282, 59 S.Ct. at 840.

The Federal Circuit recognized, *Hatter IV,* 64 F.3d at 650, that all taxes on federal judges are not unconstitutional:

Because the claimants in *O'Malley* took office after Congress had made income taxes applicable to judges' salaries, those judicial claimants suffered no diminishment in compensation after taking office. The tax was a pre-existing obligation factored into the new judges' compensation.

Plaintiffs concede that a general increase in federal income tax rates would not constitute a diminution for any judges currently in office.

### 3

We next explore the concept that Congress has no enforceable obligation to raise the salaries of judges and, consequently, whether judges receive any increase in compensation is a matter within the discretion of Congress.

In the Constitutional Convention of 1787 which drafted Article III, proposals were made and serious consideration given to prohibiting Congress from making any increase to the compensation of a judge once appointed. For discussions of various positions considered at the convention, see *United States v. Will,* 449 U.S. 200, 219–20, 101 S.Ct. 471, 482–83, 66 L.Ed.2d 392 (1980); *Atkins v. United States,* 214 Ct.Cl. 186, 217–221, 556 F.2d 1028 (1977), and *Hatter IV,* 64 F.3d at

ed Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1.

651. Indeed, such a prohibition on increases as well as decreases in compensation was adopted with respect to the President. U.S. Const. art. II, § 1, cl. 6 ("The President shall ... receive ... a Compensation, which shall neither be increased nor diminished during the Period for which he shall have been elected....").

It is reasonable to suppose that the Founders—who seriously debated whether *any* increase in the salaries of sitting judges should be permitted and agreed that there should be none for a President between elections—assumed that Congress would be under no enforceable duty or obligation to raise judicial salaries. Rather, Congress was left with discretion to increase salaries when, in its wisdom, it chose to do so. The same Convention drafted and proposed simultaneously the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law....").

The Supreme Court held in *Will*, 449 U.S. at 226–29, 101 S.Ct. at 486–88, that Congress may rescind a judicial salary increase provided in a statute so long as it does so before the increase becomes effective. "The Constitution delegated to Congress the discretion to fix salaries and of necessity placed faith in the integrity and sound judgment of the elected representatives to enact increases when changing conditions demand." *Id.* at 227, 101 S.Ct. at 487.

Earlier, the Court of Claims in *Atkins v. United States*, 214 Ct.Cl. 186, 221–28, 556 F.2d 1028 (1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978), rejecting assertions by judges that their compensation had been unconstitutionally diminished by economic inflation, recognized that Congress has discretion to increase judicial salaries or to refrain from doing so if the absence of increases is not the result of an intent to discriminate against the judiciary. No such discriminatory intent is alleged in the instant case.

Congress has provided concerning judicial compensation, § 140 of Public Law No. 97–92, 95 Stat. 1183, 1200, December 15, 1981, that federal judges are not entitled to any salary increases "except as may be specifically authorized by Act of Congress."

4

In sum, applying the concepts under discussion, we conclude that when unlawful *diminution of judicial compensation* results from imposition of a new tax, as found by the Federal Circuit in *Hatter IV*, 64 F.3d at 653, that diminution is subject to setoff or cure by simultaneous or subsequent salary increases which Congress may, in its discretion, enact, it being under no enforceable obligation to grant any increase. Thus, if Congress mandates that federal judges pay a certain amount in a new tax but, at the same time, gives those judges a salary increase in an amount equal to or greater than the amount of the tax, then any diminution within the meaning of the Compensation Clause is immediately cured. This is what occurred with respect to plaintiffs.

The order of compensation events is obviously quite important. If Congress increased judicial salaries and thereafter took action (either a direct reduction in nominal salary or imposition of a new tax) resulting in a diminution of compensation, the earlier increase would have become part of constitutionally protected compensation adversely affected by the diminution. This is the essence of *Will*, 449 U.S. at 200, 101 S.Ct. at 473–74. On the other hand, if an increase in nominal salary occurred simultaneously with or subsequent to such a diminution, the simultaneous or subsequent increase accomplishes a cure to the extent of such increase. As illustrated below, this is the situation in this case with respect to OASDI taxes withheld for 1984 and subsequent years.

C

The first *Hatter* panel in the Federal Circuit implicitly recognized that Congress may restore any diminution that may have occurred. The court reasoned that "only a timely restoration of lost compensation would prevent violation of the Constitution's prohibition against diminution of judicial salaries." *Hatter II*, 953 F.2d at 628.

Similarly, in *Will*, the judge claimants apparently recognized a prospective cure after an unlawful salary reduction was restored.

*Will,* 449 U.S. at 206, n. 3, 101 S.Ct. at 476, n. 3. There, in the first of four years at issue, Congress had made a retroactive direct reduction to nominal annual judicial salaries already in effect as of October 1, 1976, but then, effective on March 1, 1977, increased the salaries to a level which exceeded the October 1, 1976 level. *Id.* at 206, 101 S.Ct. at 476. The parties and the Court apparently assumed that the earlier unlawful reduction was cured prospectively as of the March 1, 1977 restoration.

## D

Plaintiffs' position on damages is exactly the same as it would be if there had been no increase in nominal salary since December 31, 1983. In plaintiffs' analysis, the government gets no credit for any part of the increase in salary over the years. Neither does it get any credit for the Social Security benefit.

It is consistent with plaintiffs' position that if Congress awarded all judges a pay raise of $1,000,000 per year retroactive to January 1, 1983 but not specifically or expressly related to the Social Security taxes imposed in 1983 and 1984, it would not cure the diminution resulting from imposition of the taxes. Under plaintiffs' theory, all Social Security taxes withheld must be refunded to plaintiffs and there can absolutely be no cure by subsequent increases in salary. Plaintiffs insist that only a payment specifically designated as a refund of or damages for the Social Security taxes withheld can satisfy the unconstitutional diminution found by the Federal Circuit.[9]

Plaintiffs' current position on cure represents a change of position for them. In both the original complaint, ¶ 18 at 5, and in the First Amended Complaint, ¶ 21 at 6, plaintiffs, after reciting imposition of OASDI taxes beginning on January 1, 1984, stated: "Either as a result of these deductions, *or as a result of defendant's failure to increase plaintiffs' salaries by the amount of these deductions,* defendant has diminished plaintiffs' compensation." (Emphasis added.) In the Second Amended Complaint, ¶ 23 at 6, plaintiffs made the identical statement concerning cure with respect to both OASDI taxes and HI taxes.

## E

Plaintiffs argue that *Evans v. Gore,* 253 U.S. 245, 264, 40 S.Ct. 550, 556–57, 64 L.Ed. 887 (1920), which the Federal Circuit has held controlling in *Hatter IV,* 64 F.3d at 650, effectively precludes application of a cure concept as just discussed. *Evans* held that imposition of federal income taxes on federal judges constituted a diminution in violation of the Compensation Clause. Plaintiffs point out that the day after the income tax was enacted, Congress increased the compensation of federal judges by $1500, an amount significantly higher than the income tax withheld from the judges' salary. Plaintiffs thus assert that "there was no argument that the subsequent pay increase 'cured' this diminution." Pl. Reply Br. (1/16/97) at 8–9.

There are two defects in plaintiffs' assertion that the facts of *Evans* preclude cure as a matter of law. First, there was no discussion whatever of this issue in the *Evans* opinion. The Court made no mention of any salary increase subsequent to imposition of the tax on 1918 income by an Act of Congress adopted in 1919. Second, and more importantly, the facts of *Evans* involved income tax for the single year 1918, while the 1919 salary increase referred to by plaintiffs was not effective until March 1, 1919 and was prospective only. Pl. Reply Br. (1/16/97) at A19–A21. We would agree, on the *Evans* facts, that an unlawful reduction of income with respect to one calendar year is not cured by a non-retroactive salary increase, however large, in the next calendar year.

---

9. At oral argument on damages issues conducted on March 7, 1997, the following colloquy occurred:

THE COURT [to plaintiffs' counsel]: You do take the position that if the judges this year got a staggering raise, but no reasons [were] assigned for it, it would not stop the running of this diminution?

[PLAINTIFFS' COUNSEL]: Absolutely. That is our position.

Transcript (3/7/97) at 10.

## V (Five)

In calculating the diminution which resulted from the imposition of Social Security taxes, the fundamental first step is establishment of the compensation level entitled to protection from diminution. (Because, as explained below, all plaintiffs are time-barred from contesting the withholding of HI taxes in 1983, we address only the compensation level entitled to protection immediately prior to January 1, 1984, the effective date of the imposition of OASDI taxes.)

As of December 31, 1983, the nominal annual salary [10] of district judges was $73,100, and the nominal annual salary of circuit judges was $77,300. Consequently, pursuant to the Federal Circuit's holding in *Hatter IV,* those were the compensation levels entitled to protection from diminution by imposition of the OASDI tax on January 1, 1984.

Having determined that subsequent pay raises may cure prospectively a Social Security tax withholding for the same year to the extent the salary increase is equal to or larger than the Social Security tax withholding, we turn to the calculation of any actual diminution in plaintiffs' compensation.

### A

For calendar year 1984, effective as of (retroactive to) January 1, district judges received an increase in nominal annual salary of $2,900; circuit judges received a corresponding increase of $3,100.

The OASDI tax imposed on each plaintiff for calendar year 1984 was $2,041.20. Thus, the salary increase for each plaintiff over the 1983 compensation base more than offset the OASDI tax for 1984. (Although not relevant for present purposes, the 1984 salary increase more than offset the total of both OASDI and HI taxes for 1984.)

### B

For calendar year 1985, effective as of January 1, district judges received an additional increase in nominal annual salary of $2,700 resulting in a cumulative adjustment

of $5,600 over the base protected from diminution by OASDI taxes; circuit judges received a corresponding increase of $2,800 resulting in a cumulative adjustment of $5,900.

The OASDI tax imposed on each plaintiff for calendar year 1985 was $2,257.20. Thus, the cumulative salary increase over the 1983 base more than offset the OASDI tax for 1985. (Although not relevant for present purposes, the cumulative salary increase more than offset the total of both OASDI and HI taxes for 1985.)

### C

As illustrated in the immediately preceding subpart, by calendar year 1985, the cumulative increase in nominal annual salary for both district and circuit judges exceeded the base protected from diminution by OASDI taxes by more than $4,000; these increases have remained in effect. In contrast, the total of OASDI tax imposed on each plaintiff has never exceeded $4,000 in any calendar year. Thus, the cumulative salary increase over the 1983 base has more than offset the OASDI tax for each year from 1984 through 1996.

### D

For 1986, although no increase to the nominal annual salary of any of the plaintiffs became effective, the cumulative increase over the protected base remained in effect, i.e., $5,600 for district judges and $5,900 for circuit judges. The OASDI tax imposed on each plaintiff for calendar year 1986 was $2,394. Thus, the cumulative salary increase over the 1983 base more than offset the OASDI tax for 1986. (Although not relevant for present purposes, the cumulative increase more than offset the total of both OASDI and HI taxes for 1986.)

### E

For calendar year 1987, district judges received an increase in nominal annual salary of $2,400 effective on January 1 and an addi-

---

10. In this context, "nominal annual salary" designates the stated lawful salary before deduction of federal and state income taxes, Social Security taxes and voluntary items such as life and health insurance premiums and survivor annuity premiums.

tional increase of $8,400 effective on March 1, resulting in a cumulative adjustment of $16,400 over the base protected from diminution by OASDI taxes; circuit judges received corresponding increases of $2,500 and $9,300, resulting in a cumulative adjustment of $17,700.

The OASDI tax imposed on each plaintiff for calendar year 1987 was $2,496.60. Thus, the cumulative salary increase over the 1983 base more than offset the OASDI tax for 1987. (Although not relevant for present purposes, the cumulative increase more than offset the total of both OASDI and HI taxes for 1987.)

### F

As illustrated in the immediately preceding subpart, by calendar year 1987, the cumulative increase in nominal annual salary for both district and circuit judges far exceeded $6,000; these increases have remained in effect. In contrast, the total of Social Security taxes (OASDI and HI taxes) imposed on each plaintiff has never exceeded $6,000 in any calendar year. See Schedules A through D, Def.Br. (2/25/97) and Appendices B & C, Pl.Br. (11/12/96). Thus, the cumulative salary increase over the 1983 base has more than offset the total of both OASDI and HI taxes for each year from 1984 through 1996, and, consequently, no unlawful diminution in judicial compensation occurred during those years.

### G

There were additional salary increases for both district and circuit judges effective on February 1, 1990 and on January 1 of 1991, 1992 and 1993.[11] As of January 1, 1993, the total nominal annual salary of district judges was (and remains) $133,600, and the corresponding salary of circuit judges was (and remains) $141,700. These most recent salary levels reflect a cumulative increase in nominal annual salary over the 1983 base protected from diminution by OASDI taxes ($73,100 for district judges and $77,300 for circuit judges) in the amount of $60,500 for district

judges and $64,400 for circuit judges. These annual sums are more than ten times higher than the total of Social Security taxes withheld during any calendar year.

### VI

We next address (1) the OASDI claims of the eight later-filing plaintiffs and (2) the claims of all plaintiffs based on imposition of HI taxes.

Resolution of these claims involves application of statutes of limitations together with two related issues: (1) whether the "relation-back" doctrine applies to claims of the later-filing judges and to new claims by the "original plaintiffs" first asserted in 1992, and (2) whether the "continuing claim" doctrine is applicable to the claims asserted in this case. Alternatively, application of the concept of cure discussed in Parts IV and V above has potential application to a complete resolution of these remaining claims.

### A

Reference is made to Part I of this opinion for designation of the two statutes which resulted in imposition of Social Security taxes on federal judges and the effective date of each. Suffice it to say at this juncture that HI taxes became effective and were first withheld from judicial compensation on January 1, 1983, and that OASDI taxes became effective and were first withheld from judicial compensation on January 1, 1984.

Reference is further made to Subpart III A above for a statement of the timing of claim presentation and appearance of plaintiffs in this litigation. Suffice it to say for limitations purposes that the eight later-filing judges first presented (or reasserted) their claims based on OASDI taxes in June and December 1992 (more than eight years after imposition of OASDI taxes on judges) and that all plaintiffs first presented claims based on imposition of HI taxes in December 1992 (more than nine years after imposition of HI taxes on judges).

---

11. The increases in nominal annual salary for district judges were in the amount of $7,500 in 1990, $28,500 in 1991, $4,400 in 1992 and $4,100 in 1993. For circuit judges the increases were $7,100 in 1990, $30,200 in 1991, $4,600 in 1992 and $4,400 in 1993.

## B

A claim against the United States for damages is barred unless the complaint is filed within six years after the claim first accrued. 28 U.S.C. §§ 2401(a) & 2501.[12] A cause of action accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action," *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964), and "the plaintiff was or should have been aware of their existence," *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir. 1988). "A constitutional claim can become time-barred just as any other claim can.... Nothing in the Constitution requires otherwise." *Block v. North Dakota ex rel. Board of University & School Lands,* 461 U.S. 273, 292, 103 S.Ct. 1811, 1822, 75 L.Ed.2d 840 (1983). *See Lunaas v. United States,* 936 F.2d 1277, 1279–80 (Fed.Cir.1991), *cert. denied,* 502 U.S. 1072, 112 S.Ct. 967, 117 L.Ed.2d 132 (1992) (applying *Block* to bar suit based on Article VI of Constitution brought more than six years after accrual of claim).

The Supreme Court has stated that the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

## C

■ Based on this law, the critical initial matters for determination are the dates on which plaintiffs' claims for the two new taxes first accrued. Plainly, those dates are January 1, 1983 for HI taxes and January 1, 1984 for OASDI taxes, the effective dates of imposition of the taxes and the respective dates on which each tax was first withheld from plaintiffs' salaries.

A comparison of these claim accrual dates with the initial claim-presentation dates significantly exceeding six years from claim accrual leads inescapably to the conclusion that unless the claims can be deemed to relate back to a date within six years of initial accrual,[13] the claims are barred under the two controlling statutes of limitations.

## D

Plaintiffs argue that the claims of the later-filing judges asserted in the first and second amended complaints (June and December 1992) relate back to the claims in the original complaint (December 29, 1989) pursuant RCFC 15(c) and thus are timely. RCFC 15(c) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The relation-back issue concerning OASDI taxation is different from the issue concerning HI taxation:

(a) To the extent of their OASDI claims, the later-filing plaintiffs were asserting the same cause of action as that set forth in the original complaint. Therefore, while there can be no question that the OASDI "claim ... asserted in the amended pleading arose out of the ... occurrence set forth ... in the original" complaint, the relation-back problem of the later-filing judges is that they were not the same as the original plaintiffs. Though similarly situated, their position in the case is no different than it would be if each later-filing plaintiff had filed his own separate suit.

(b) To the extent of the HI claims first presented in the Second Amended Complaint, all plaintiffs are asserting a claim

---

**12.** Title 28 U.S.C. § 2401(a) provides in pertinent part: "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

   Title 28 U.S.C. § 2501 provides in pertinent part: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be

barred unless the petition thereon is filed within six years after such claim first accrues."

**13.** Unless the claims are deemed to relate back to a time within six years of first accrual or unless they are deemed to be "continuing claims," the six-year statutes of limitations would have run on HI claims on January 1, 1989 and on OASDI claims on January 1, 1990.

which did not arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

"The general rule ... is that the rule of relation-back does not extend to amendments that add new parties or causes of action." *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 588, 372 F.2d 951, 961 (1967). We address these two relation-back issues separately.

**E**

■ The matter of potential relation back of HI claims may be dealt with succinctly. When these claims were broached by all plaintiffs in the Second Amended Complaint submitted almost ten years after first accrual, they were totally new diminution claims.

The diminution claims set forth in the original and the first amended complaints were emphatically and specifically based on imposition of OASDI taxes pursuant to legislation adopted in 1983. Although at the time of filing of the original complaint the HI tax (imposed pursuant to legislation adopted in 1982) had been in effect for almost one year, it was not mentioned. Consequently, the HI claims of all plaintiffs did not arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," RCFC 15(c), and do not relate back to any date prior to December 11, 1992.

Interestingly, even if the HI tax claims of all plaintiffs were deemed to relate back to the original case filing date, those claims would still be time barred since the original filing date (December 29, 1989) was more than six years after the claims for HI taxes first accrued (January 1, 1983). Further, even if all HI taxes withheld from the salary of each judge during 1983 are viewed as having been withheld on the last salary payment date for judges during calendar year 1983, that day would be December 1, 1983. Thus, in any event, the HI claims would still have been presented more than six years after they first accrued.[14]

We address in Part VII below whether plaintiffs' HI claims are continuing claims not time barred to the extent of taxes withheld after December 11, 1986, the commencement of the six-year period preceding presentation of the Second Amended Complaint. (However, alternatively, even if the claims are deemed continuing claims, any portion of such claim accruing after December 11, 1986 has been offset by salary increases, as explained in Parts IV and V above.)

**F**

We next address the relation-back issue with respect to assertion of OASDI claims by the later-filing plaintiffs. As stated in Subpart VI D above, the issue with respect to OASDI taxes is whether or under what circumstances new parties may be added to a case and obtain the benefit of the original filing date. The general rule is that amendments which add new parties do not relate back. We must explore whether the later-filing plaintiffs qualify for an exception to the rule.

A recent circuit court of appeals pronouncement on amendments seeking to add parties to a complaint asserting a claim on

---

14. Plaintiffs suggest that the cause of action for diminution resulting from HI taxes did not first accrue until April 15, 1984. Pl.Br. (1/16/97) at 21–23; Transcript (3/7/97) at 16–21. Their position is grounded on 26 U.S.C. (I.R.C.) § 6513(c) which provides that *for purposes of 26 U.S.C. § 6511*, Social Security taxes with respect to one calendar year, if paid before April 15 of the following calendar year, are deemed paid and the corresponding returns are deemed filed on April 15 of such succeeding year. But 26 U.S.C. (I.R.C.) § 6511 establishes deadlines ("3 years from the time the return was filed or 2 years from the time the tax was paid") for administrative refund claims which must precede any court suit for tax refunds. *See* 26 U.S.C. (I.R.C.) § 7422(a).

Plaintiffs' position concerning accrual of HI claims is meritless for two reasons. First, the Federal Circuit has determined that the claims asserted in this litigation are not formal tax refund claims, *Hatter II*, 953 F.2d at 630; consequently sections 6511 and 6513(a) of the Internal Revenue Code simply have no application. Second if these tax code provisions controlled the accrual of plaintiffs' claim, the limitations period would have expired not later than April 15, 1987 (three years after the deemed return date for 1983 taxes), years before the filing date of the original complaint.

which the controlling statute of limitations has expired is as follows:

> An amendment adding a party plaintiff relates back to the date of the original pleading only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff.

*In re Syntex Corp. Securities Litigation,* 95 F.3d 922, 935 (9th Cir.1996) (citing *Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278–79 (9th Cir.1982)).

■ Court of Claims case law makes plain that in suits against the United States, the "identity of interests" requirement depends on representational relationships among the original and newly proposed parties, not on merely being similarly situated with respect to the claim in the original pleading.

■ Here, even if it could be said that the original timely complaint gave the government adequate notice of the OASDI claims of the later-filing judges, and even if it could further be said that relation back of the OASDI claims of the later-filing plaintiffs would not unfairly prejudice the government, the later-filing judges do not share the requisite "identity of interests" with the original plaintiffs.

This issue was addressed by the Court of Claims in *Snoqualmie Tribe of Indians,* 178 Ct.Cl. at 585–89, 372 F.2d at 959–61. In that case, the Snoqualmie Tribe brought an action against the United States based upon alleged inequity in a treaty with various Indian tribes. After suit was filed, the Snoqualmie Tribe realized that the original petition should have included a claim on behalf of the Skykomish Tribe, since it appeared that the Skykomish tribe either had been a subgroup of the Snoqualmie Tribe at the time the treaty was made or had merged with the Snoqualmie Tribe thereafter through intermarriage. *Id.* at 574, 372 F.2d at 953. The Snoqualmie plaintiff sought to amend its complaint to include a claim on behalf of the by then extinct Skykomish Tribe, but the five-year limitations period had expired. *Id.*

at 585, 372 F.2d at 959. Thus, the court was required to resolve whether the amendment would be allowed to relate back to the original pleading, avoiding the statute of limitations.

After first announcing the general rule that the doctrine of relation-back does not extend to amendments that add new parties, *Id.* at 588, 372 F.2d at 961, the Court of Claims found that there existed a unique connection between the Snoqualmie Tribe and the Skykomish Tribe, the former being the "corporate representative" of the latter in that case. *Id.* at 582, 372 F.2d at 958. Thus, the court held that the Skykomish claim could relate back to the original Snoqualmie claim. *Id.* at 588–89, 372 F.2d at 961. The court reasoned that "on our theory of representation there is no new party added by amendment. The Snoqualmie Tribe is the only claimant; it is simply an entity serving in two representative capacities." *Id.* at 588, 372 F.2d at 961. The court further explained that "we would have greater difficulty allowing the amendment if we thought it was brought by an entirely unrelated party even though it arose out of the same transaction." *Id.* at 589, 372 F.2d at 961.

This requirement of representative relationship in order for an amendment adding new parties to relate back was reaffirmed by the Court of Claims in *Baldwin Park Community Hospital v. United States,* 231 Ct.Cl. 1011, 1982 WL 25837 (1982). In that case, an original hospital plaintiff filed an amended petition in which thirty-six hospital plaintiffs with similar claims were added several months after the original petition was filed. *Id.* 231 Ct.Cl. at 1011. (It does not appear whether a limitations period had expired in the interim, but the court treated the difference in filing dates as significant.) The defendant argued that the new plaintiffs should not enjoy the benefit of the original petition's filing date pursuant to a relation-back rule identical to RCFC 15(c). The Court of Claims found that the new plaintiffs were operated and owned either directly or through subsidiary corporations by the original plaintiff, or by a company to which the original plaintiff was the legal successor in

interest. On the basis of this representative relationship (common corporate ownership of the hospitals), the court allowed the new plaintiffs to relate their similar claims back to the original complaint's filing date. *Id.* at 1012. The requisite "identity of interests" was satisfied in that circumstance. See generally, *Custer v. United States*, 224 Ct.Cl. 140, 154–55, 622 F.2d 554, 563, *cert. denied*, 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980) (denying relation back to original filing date by a new party alleging same claim).

Recently, this court applied Court of Claims precedent concerning the relation-back doctrine to facts similar to those in the case at bar. *Creppel v. United States*, 33 Fed.Cl. 590 (1995). In 1991, shortly before expiration of the six-year statute of limitations, landowners filed several related suits (consolidated by the court) alleging takings. After the limitations period had expired, the original plaintiffs moved to add 43 new plaintiffs who owned land affected by the alleged takings. The court found that, even assuming that the claims of the new plaintiffs arose out of the same transaction or occurrence that gave rise to the original complaints, there was no corporate or other legal relationship between the new and the original plaintiffs. *Creppel*, 33 Fed.Cl. at 596. The court stated:

> The identity of interest between the original and proposed new plaintiffs is limited to geographic proximity—the fact that all landowners, at the time of the alleged taking, owned property within [the affected site]. The geographic proximity of a discrete parcel of land to property owned by plaintiffs asserting a takings claim is not enough.

*Id.* Finding no "formal connection" between the original plaintiffs and the proposed new plaintiff, the court held that the new plaintiffs could not relate their claims back to the filing date of the original complaints. Thus, their claims were barred by the statute of limitations.

Turning to the case at bar, there is no formal connection or representational relationship among the original and the later-filing judges. In essence, each judge is suing individually for diminution of his personal compensation.

Plaintiffs' interpretation of the relation-back doctrine would allow unrelated parties, after expiration of the limitations period, to obtain the benefit of a timely filed complaint so long as the same governmental action caused their damages. Under this approach, plaintiffs with common grievances could evade the statute of limitations as a matter of course by merely adding themselves to a timely filed complaint at any time after the expiration of the statute of limitations. We do not believe that this would be consistent with congressional intent and controlling precedent dealing with statutes of limitation and relation back.

It would be anomalous if the later-filing judges in this civil action were deemed timely by application of the relation-back rule when other judges who filed a separate suit on the same day alleging an identical cause of action for diminution would be deemed untimely.

Based on the foregoing, we conclude that the OASDI claims of the later-filing judges, all first presented more than six years after first accrual, do not relate back to the timely filing date of the original complaint and that, consequently, those claims are barred.

We address in Part VII below whether the later-filing plaintiffs' OASDI claims are continuing claims not time barred to the extent of taxes withheld after June and December 1986, the commencement months of the six-year periods preceding presentation of the First and Second Amended Complaints. (However, alternatively, even if the claims are deemed continuing claims, any portion of such claim accruing after June 1986 has been offset by salary increases, as explained in Parts IV and V above.)

## VII

The next issue for resolution is whether the diminution claims are "continuing claims" so that even if some were not presented within six years of the time of first accrual, they may nonetheless be maintained with respect to damages accruing within the six-year period preceding presentation. (The issue was raised by defendant in connection

with HI taxes, Def. Br. (2/25/97), p. 6 n. 3, presumably because no plaintiff submitted a timely claim for HI taxes. The issue is equally applicable to OASDI claims of the later-filing plaintiffs.)

### A

■ The continuing claim doctrine provides that when the government owes a plaintiff a continuing, recurring duty to make payments of money, a new cause of action arises with each breach of that duty. *Tabbee v. United States*, 30 Fed.Cl. 1, 5 (1993) and cases therein cited. *See generally Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). See especially *Acker v. United States*, 23 Cl.Ct. 803, 804–06 (1991), for history and analysis of the doctrine. Under that doctrine, each incident of withholding an installment of an obligation to make continuing payments gave rise to a new claim for damages. The continuing claim doctrine prevented a statute of limitations from shielding an offender in an on-going wrongdoing, and protected recurring claims that might otherwise be barred if based upon events occurring more than six years prior to suit.

### B

However, application of the continuing claim doctrine was rejected by the Federal Circuit in *Hart v. United States*, 910 F.2d 815 (Fed.Cir.1990). There the widow of a military retiree filed suit seeking to recover Survivor Benefit Plan annuity payments due after her husband's death. The suit was filed more than six years after the death of her husband, upon which date she became eligible to receive the benefits. *Id.* at 816.

Even though her suit was filed more than six years after her husband's death, plaintiff in *Hart* urged the court to apply the continuing claim doctrine. She argued that she had a new claim each month for an annuity installment payment and that her claim as to that amount "first accrued" on the first day of each month. *Id.* at 818. The Federal Circuit rejected her argument. The court reasoned that applying the continuing claim doctrine would mean that "the statute of limitations would never run in a claim such as this one, with respect to the six years of benefits preceding the filing of suit and thereafter." *Id.* The court continued: "Because all events necessary to her benefits claim had occurred when her husband died, we conclude that plaintiff's claim for ... annuity benefits is not a 'continuing' claim." *Id.*

The Federal Circuit reasoned: "Exceptions cannot be engrafted on the statute of limitations so as to allow claims to be asserted beyond the six year time limit set forth in Section 2501. ... Only Congress can lengthen the time period for bringing suit against the United States." *Id.* at 817. "Congress has not chosen to extend the time limit for suits such as this one." *Id.* at 819. *See Sankey v. United States*, 22 Cl.Ct. 743, 746 (1991), *aff'd*, 951 F.2d 1266 (Fed.Cir.1991) (stating, based on *Hart*, 910 F.2d 815: "this court no longer recognizes the continuing claim doctrine"); *but see Acker*, 23 Cl.Ct. at 804–06 (recognizing that the continuing claim doctrine "may be analytically suspect" and "is not readily reconciled with the wording of the statute of limitations," but holding that *Hart* "cannot be interpreted to invalidate the continuing claim doctrine" because *Hart* was not an *en banc* decision that could overrule Court of Claims precedent).

### C

Likewise, in a more recent case, *Fallini v. United States*, 56 F.3d 1378 (Fed.Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996), the Federal Circuit refused to apply the continuing claim doctrine to salvage damages for the last six years of an alleged ongoing taking effected by legislation. The *Fallini* plaintiffs contended that the government had engaged, since 1971, in a continuing course of taking in violation of the Fifth Amendment by requiring them to provide water to wild horses when plaintiffs provided water to their domestic livestock on federal land. As alleged, the takings resulted from enactment in 1971 of a statute which compelled plaintiffs to provide water to the federally-protected wild horses; plaintiffs sought recovery for alleged

injuries they suffered within six years prior to the filing of their suit in 1992.

The Federal Circuit found it unnecessary to address the merits of the case, instead holding that the suit was untimely. *Id.* at 1380. The court, after stating the usual rule that "a cause of action accrues when all the events have occurred that fix the defendant's alleged liability and entitle the plaintiff to institute an action," *id.*, observed that the plaintiffs had "been cognizant of the facts underlying the alleged taking since long before they filed their complaint," since the alleged taking resulted from legislation enacted in 1971. *Id.* The court held that "for purposes of claim accrual, such a taking occurs on the date of enactment of the legislation." *Id.* at 1382–1383.[15]

### D

■ Based on the case authority examined in this Part VII, we conclude that none of the claims asserted in this case are "continuing" claims within the meaning of the former continuing claim doctrine. On the one hand, the unlawful diminution consisted of imposition of two new taxes on specific effective dates; on the other hand, even if plaintiffs took the position that a new claim arose with each instance of withholding of HI and OASDI taxes, the holding in *Hart*, 910 F.2d 815, would prohibit recovery for any such recurring claim not asserted within six years of the initial effective date of each new tax.

This holding has potential, alternative impact on the HI tax claims of all plaintiffs and the OASDI claims of the later-filing plaintiffs, since those claims were first presented more than six years after first accrual.

Based on our conclusions in Parts IV and V above concerning offset resulting from salary increases, the claims just described would not result in recovery of damages even if they could be addressed as continuing claims.

### VIII

Plaintiffs claim entitlement to compounded interest on any damages. The government objects to any award of interest and further argues that even if interest is awardable, it should be simple, not compounded. The threshold issue, then, is whether plaintiffs are entitled to recover interest on a claim under the Compensation Clause of the Constitution. All parties agree that this is an issue of first impression.

The general rule is that a successful plaintiff may not obtain interest on a claim against the United States unless Congress has expressly waived its sovereign immunity on interest by contract or statute. *Library of Congress v. Shaw,* 478 U.S. 310, 317, 106 S.Ct. 2957, 2962–63, 92 L.Ed.2d 250 (1986) ("In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute.") *See generally* 28 U.S.C. §§ 1961 & 2516, 41 U.S.C. § 611.

### A

Under existing case law, the only exceptions to this general rule pertain to awards of compensation under the Fifth Amendment takings clause.[16] That clause requires "just compensation" to one whose property has been taken by the government for public use.

The seminal case authorizing an award of interest in addition to an award for the value

---

15. In its discussion of the nature of the *Fallini* plaintiffs' taking claim, the court said: "If the horses were agents or instrumentalities of the United States government, the analysis of what governmental action constituted the alleged taking *might* well be different." *Fallini,* 56 F.3d at 1383 *(emphasis added)*. This statement would appear to have no application to claims, as in the case at bar, in which the unlawful diminution, i.e., the imposition of two new taxes on sitting judges, *Hatter IV,* 64 F.3d at 652, was accomplished by discrete legislative enactments which had an immediate impact.

16. The Fifth Amendment of the U.S. Constitution provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V.

The requirement of 28 U.S.C. § 1498 that awards for unauthorized use of intellectual property be "reasonable and entire" has been construed to be a Congressional authorization of interest, *Waite v. United States,* 282 U.S. 508, 51 S.Ct. 227, 75 L.Ed. 494 (1931), and Fifth Amendment principles control application of the statute, *see ITT Corp. v. United States,* 17 Cl.Ct. 199, 232–33 (1989).

of property taken by the government is *Seaboard Air Line Ry. v. United States,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923). In *Seaboard,* the government took possession of private land to provide storage space for Army supplies pursuant to an Act of Congress. The Act did not authorize an award of interest. The Supreme Court stated: "Just compensation is provided for by the Constitution and the right to it cannot be taken away by the statute." *Seaboard,* 261 U.S. at 304, 43 S.Ct. at 356. The Court determined that just compensation "means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken." *Id.*

The Court approved an award of interest under these circumstances. "The only question here is whether payment at a subsequent date of the value of the land as of the date of taking ... is sufficient to constitute just compensation." *Id.* at 305, 43 S.Ct. at 356. The Court held: "Where the United States ... [takes land], the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking." *Id.* at 306, 43 S.Ct. at 356.

The Supreme Court has repeatedly recognized entitlement to interest in Fifth Amendment takings cases in the absence of specific congressional authorization. *See Shoshone Tribe of Indians v. United States,* 299 U.S. 476, 497, 57 S.Ct. 244, 251–52, 81 L.Ed. 360 (1937) ("the right to interest or a fair equivalent, attaches itself automatically to the right to an award of damages"); *Brooks–Scanlon Corp. v. United States,* 265 U.S. 106, 125, 44 S.Ct. 471, 475, 68 L.Ed. 934 (1924); *United States v. Rogers,* 255 U.S. 163, 168–69, 41 S.Ct. 281, 281–82, 65 L.Ed. 566 (1921).

### B

The critical factor enabling a takings plaintiff to obtain interest without specific congressional allowance is that the source of the claim is the Constitution. Indeed, consistent with the general rule, the Supreme Court has held that no interest is allowed if a claimant's cause of action if founded on a "just compen-

sation" statutory provision rather than the Constitution. *United States v. Alcea Band of Tillamooks,* 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951). In *Tillamooks,* the Court denied interest on compensation awarded for taking of original Indian title by the government, where the recovery by the Indians was not grounded on the Fifth Amendment, but on a statute. *Id.* The Court stated that the no-interest rule "precludes an award of interest even though a statute should direct an award of 'just compensation' for a particular taking." *Id.* at 49, 71 S.Ct. at 552. The Court then held that "the only exception arises when the taking entitles the claimant to just compensation under the Fifth Amendment. Only in such cases does the award of compensation include interest." *Id.* (quoting *Seaboard,* 261 U.S. 299, 43 S.Ct. 354).

### C

Defendant argues that the "Just Compensation Clause" of the Fifth Amendment and the "Compensation Clause" in Article III of the Constitution serve entirely different purposes and use the term "compensation" in different senses. Assuming the accuracy of this position, it is irrelevant.

Resolution of the interest issue should not turn on whether the term "compensation" means the same thing in the Just Compensation Clause as in the Compensation Clause. Rather, the common denominator is that both clauses are contained in the Constitution.

We find no principled basis to distinguish the constitutionally based entitlement to interest of takings plaintiffs from the constitutional position of federal judges. Both the Fifth Amendment and Article III affirmatively require the payment of compensation. If recompense for delay in compensation is required for takings claimants despite the general rule, surely the federal judge whose constitutionally protected compensation is delayed is at least equally entitled to such recompense.

Indeed, for two reasons, there is a sounder basis for interest on delayed compensation protected under Article III than on just com-

pensation guaranteed by the Fifth Amendment.

First, the language of Article III specifically requires that judicial compensation be paid "at stated Times," U.S. Const. art. III, § 1. In practical terms, how is a violation of that provision to be corrected other than by interest for the period of delay in compliance. In contrast, there is no specific language in the Fifth Amendment's takings provision concerning timing of just compensation, and entitlement to interest depends on interpretation of the term "just compensation."

■ Second, the primary purpose of the Compensation Clause is to maintain the independence of the federal judiciary. *United States v. Will*, 449 U.S. 200, 217, 101 S.Ct. 471, 481–82, 66 L.Ed.2d 392 (1980); *O'Malley v. Woodrough*, 307 U.S. 277, 284, 59 S.Ct. 838, 840–41, 83 L.Ed. 1289 (1939); *Hatter IV*, 64 F.3d at 649; *Atkins v. United States*, 214 Ct.Cl. 186, 228, 556 F.2d 1028 (1977). Denying interest on an award to compensate for its violation would plainly threaten that independence; Congress would then be free to delay indefinitely payment of the principal amount of protected compensation leaving the judges with no remedy for the delay.

### D

We conclude that judges whose compensation has been diminished in violation of Article III are entitled to reasonable interest on the principal amount of such diminution.

### E

■ Once the determination has been made in constitutional cases that interest is required or appropriate, the rate of interest, whether interest shall be simple or compounded and the frequency of compounding are matters within the broad discretion of the trial court. *See Miller v. United States*, 223 Ct.Cl. 352, 399–400, 620 F.2d 812, 837 (1980).

Plaintiffs have specifically requested that the 52–week Treasury bill rate compounded annually be used with respect to any damages awarded. This request is most reasonable, *cf. Hughes Aircraft Co. v. United States*, 31 Fed.Cl. 481, 494 (1994), *aff'd*, 86 F.3d 1566, 1575 (Fed.Cir.1996), *vacated on other grounds*, ——— U.S. ———, 117 S.Ct. 1466, 137 L.Ed.2d 680 (1997), and interest shall be awarded substantially as requested. See Part IX below for the precise expression of the interest awarded.

### IX

Based on all the foregoing, it is ORDERED that:

1. Judgment in the principal amount of $328.95, plus interest from January 1, 1984 to date of payment (calculated as described below), shall be entered in favor of each of the following seven plaintiffs: (a) District Judge TERRY J. HATTER, JR.; (b) MARY MARTIN ARCENEAUX, on behalf of the late Judge George Arceneaux, Jr.; (c) District Judge PETER H. BEER; (d) DOLORES LEE BURCIAGA, executrix of the estate of District Judge Juan G. Burciaga, deceased; (e) District Judge A.J. MCNAMARA; (f) District Judge RAUL A. RAMIREZ; and (g) District Judge THOMAS A. WISEMAN, JR.

2. Judgment in the principal amount of $347.85, plus interest from January 1, 1984 to date of payment (calculated as described below), shall be entered in favor of Circuit Judge HARRY PREGERSON.

3. Judgment with respect to the remaining eight plaintiffs shall be entered in favor of the defendant.

4. Interest awarded above shall be calculated at the 52–week Treasury bill rate described in 28 U.S.C. § 1961(a). The rate during any calendar year shall be that determined for the last auction of such bills next preceding January 1 of such calendar year. Interest shall be compounded annually as of January 1 of each year.

5. Each party shall bear its own costs.