**Judge Terry J. HATTER, Jr., Mary Martin Arceneaux, on behalf of the late Judge George Arceneaux, Jr., Judge Peter H. Beer, Judge Dudley H. Bowen, Jr., Chief Judge Juan G. Burciaga, Judge A.J. McNamara, Judge Harry Pregerson, Judge Raul A. Ramirez, Judge Norman C. Roettger, Jr., Chief Judge Thomas A. Wiseman, Jr., Chief Judge Terence T. Evans, Judge Henry A. Mentz, Jr., Chief Judge Wilbur D. Owens, Jr., Judge Henry R. Wilhoit, Jr., Judge Harold A. Baker, and Chief Judge Michael M. Mihm, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 94–5139.**

United States Court of Appeals, Federal Circuit.

Aug. 30, 1995.

Steven S. Rosenthal, Morrison & Foerster, Washington, DC, argued for plaintiff-appellants. With him on the brief were W. Stephen Smith and Eric N. Richardson. Of counsel was Ellen E. Deason.

Jeanne E. Davidson, Asst. Director, Commercial Litigation Div., Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Of counsel was Earl Sanders, Office of Gen. Counsel, Office of Personnel Management.

Before ARCHER, Chief Judge, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

Sixteen federal judges challenged the withholding of Social Security taxes from their judicial salaries as a violation of the Compensation Clause of the United States Constitution, Article III, section 1. Accordingly, they sought a tax refund or recovery of their diminished compensation. The United States Court of Federal Claims granted the Government summary judgment. *Hatter v. United States*, 31 Fed.Cl. 436 (1994). Because the Compensation Clause forbids diminishments in the compensation of Article III judges after they have taken office, and because the trial court did not determine whether a diminution in fact occurred, this court reverses and remands.

## BACKGROUND

Until 1983, judges appointed under Article III of the Constitution, like most federal employees, did not participate in the Social Security program. Most legislative and executive federal employees acquired a retirement annuity by contributing to the Civil Service Retirement System. 5 U.S.C. §§ 8331–51 (1994). After meeting age and service requirements, however, Article III judges receive a retirement annuity equal to their judicial salaries without making additional payments. 28 U.S.C. § 371(a) (1988 & Supp. V 1993).

In the early 1980s, Congress ordered withholding of certain components of the Social Security tax from the salaries of most federal employees, including Article III judges. Withholding of the Hospital Insurance portion began on January 1, 1983. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 278(a), 96 Stat. 324, 559, 562 (codified as amended at 26 U.S.C. § 3121(u) (1988)). Withholding of the Old Age and Survivors Disability Insurance portion began on January 1, 1984. Social Security Amendments of 1983, Pub.L. No. 98–21, § 101(a)(1),(b)(1) & (d), 97 Stat. 65, 67–70 (codified as amended at 26 U.S.C. § 3121(b)(5)(E) (1988 & Supp. V 1993) and 42 U.S.C. § 410(a)(5)(E) (1988 & Supp. V 1993)).

Sixteen Article III judges—all appointed before January 1, 1983—sued in the Court of Federal Claims for a refund of these Social Security taxes or recovery of their diminished compensation. The judges claimed that the taxation diminished their judicial compensation in violation of the Compensation Clause of the Constitution. The trial court granted the Government summary judgment that the Compensation Clause does not prohibit application of the tax to sitting Article III judges. *Hatter,* 31 Fed.Cl. at 445–47. The claimants appealed.

### DISCUSSION

This court reviews a grant of summary judgment by the Court of Federal Claims *de novo.* *Cohen v. United States,* 995 F.2d 205, 207 (Fed.Cir.1993).

### I.

The Constitution's Compensation Clause states:

> The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services a Compensation, *which shall not be diminished during their Continuance in Office.*

U.S. Const. art. III, § 1 (emphasis added). This constitutional language protects one of the most remarkable innovations of the 1787 document: a judicial branch sufficiently independent to enforce constitutional limitations on all branches of Government. The Supreme Court acknowledged:

> The Compensation Clause has its roots in the longstanding Anglo–American tradition of an independent Judiciary. A Judiciary free from control by the Executive and Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government.

*United States v. Will,* 449 U.S. 200, 217–18, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980). Alexander Hamilton, writing in *The Federalist* No. 79, explained the Framers' reasoning for this means of protecting the separation of powers: "In the general course of human nature, a power over a man's subsistence amounts to a power over his will." *The Federalist* No. 79, at 472 (Clinton Rossiter ed., 1961) (emphasis omitted).

To provide a judiciary with sufficient independence to protect constitutional rights against any incursion, the Framers adopted an unrestricted protection for judicial compensation. Judicial independence, Alexander Hamilton prophetically noted, would prove "the citadel of the public justice and the public security." *The Federalist* No. 78, at 466 (Clinton Rossiter ed., 1961). Thus, as the Supreme Court concluded:

> [T]he prohibition against diminution was not to benefit the judges, but, like the clause in respect of tenure, to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations, and pervading principles of the Constitution and to the administration of justice without respect to persons and with equal concern for the poor and the rich.

*Evans v. Gore,* 253 U.S. 245, 253, 40 S.Ct. 550, 553, 64 L.Ed. 887 (1920). For these reasons, the Constitution's language broadly prohibits any diminution in judicial compensation during a judge's continuance in office.

### II.

■ This case raises the question whether imposition of new taxes on judges after they have taken office unconstitutionally diminishes their compensation. The Supreme Court addressed this very issue in *Evans.* In *Evans,* the Court held that the Compensation Clause prohibited imposition of the newly enacted income tax on sitting judges. Examining the broad constitutional protection for judicial independence, the Court wrote:

> The prohibition is general, contains no excepting words and appears to be directed against all diminution, whether for one purpose or another; and the reasons for its adoption ... make with impelling force for the conclusion that the fathers of the Constitution intended to prohibit diminu-

tion by taxation as well as otherwise,—that they regarded the independence of the judges as of far greater importance than any revenue that could come from taxing their salaries.

*Id.* at 255, 40 S.Ct. at 553; *see also id.* at 249–52, 40 S.Ct. at 553.

When the judges in *Evans* first assumed office, Congress had not charged them with the duty of paying income taxes. Thus, the imposition of these taxes on their salaries acted as a reduction in their salary. As the Court observed:

> Here the Constitution expressly forbids diminution of the judge's compensation, meaning, as we have shown, diminution by taxation or otherwise.... [T]he compensation suffers a diminution to the extent that it is taxed.

*Id.* at 264. The Court therefore invalidated application of the income tax to judges who had taken office prior to the tax.

*Evans* controls this case. The claimants here are Article III judges who took office prior to imposition of the Social Security taxes in question. Federal law did not charge the claimants with the duty of paying Social Security taxes when they first assumed office. Subsequent imposition of the taxes reduced the claimants' salaries, as in *Evans.*

The subsequent Supreme Court case of *O'Malley v. Woodrough,* 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939), does not affect this analysis. In that case, the Court held that newly appointed Article III judges must continue to pay income taxes just as they had prior to appointment:

> To subject them to a general tax is merely to recognize that judges are also citizens, and that their particular function in government does not generate an immunity from sharing with their fellow citizens the material burden of the government whose Constitution and laws they are charged with administering.

*Id.* at 282, 59 S.Ct. at 840.

Because the claimants in *O'Malley* took office after Congress had made income taxes applicable to judges' salaries, those judicial claimants suffered no diminishment in compensation after taking office. The tax was a pre-existing obligation factored into the new judges' compensation. On this basis *O'Malley* is distinguishable from *Evans* and the facts of this case. In *Evans* and this case, the claimants were already judges when the Social Security taxes took effect. The taxes therefore affected the claimants' established compensation. Thus, Congress's imposition of the Social Security tax on the claimants triggered scrutiny under the Compensation Clause.

The Supreme Court has stated that *O'Malley* "undermined the reasoning of *Evans.*" *United States v. Will,* 449 U.S. 200, 227 n. 31, 101 S.Ct. 471, 487 n. 31, 66 L.Ed.2d 392 (1980). This court's predecessor has made the same point. *See Atkins v. United States,* 556 F.2d 1028, 1044, 214 Ct.Cl. 186 (1977) (en banc), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). Neither of these pronouncements, however, are sufficient to overrule *Evans.* Had changes in judicial doctrine in fact "removed or weakened the conceptual underpinnings" of *Evans,* the Court itself would have overruled the case. *Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 2370–71, 105 L.Ed.2d 132 (1989). It has not done so. Further, as the Supreme Court recently stated:

> If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.

*Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). Again, the Supreme Court has never overruled *Evans.* *Evans* governs this case more directly than *O'Malley.*

The trial court erred by upholding the imposition of Social Security taxes on the claimants on the grounds that such taxation

was both "generally applicable" and "non-discriminatory." *See O'Malley,* 307 U.S. at 282, 59 S.Ct. at 840; *see also Atkins,* 556 F.2d at 1045. The trial court holding thus interprets the Constitution's Compensation Clause to forbid only discriminatory taxes which single out the federal judiciary. In other words, the trial court in effect read the term "compensation" as synonymous with "salary," and "diminished" as synonymous with "intentionally reduced." This reading limited the protections for judicial independence to discriminatory attacks on the judiciary in the form of direct reductions in salary.

■ The words of the Constitution are not so limited, nor are its protections for judicial independence. "Compensation" embraces all forms of remuneration, not merely salary. "Diminished" embraces all means of decreasing, regardless of the intent or target of the reduction. Thus, the Constitution protects judicial compensation against all forms of diminishment.

The Constitution's enactment history supports this reading of the Compensation Clause. On June 13, 1787, the Constitutional Convention's Committee of the Whole drafted a resolution prohibiting Congress from either increasing or decreasing the compensation of judges. Clinton Rossiter, *1787: The Grand Convention* 365 (1966). Gouverneur Morris opposed the prohibition on increases, as he believed that Congress should have the power to augment judicial compensation "as circumstances might require" to avoid "any improper dependence in the judges." 2 Max Farrand, *Records of the Federal Convention of 1787* at 44 (1911). Benjamin Franklin agreed and specified two circumstances—increases in workload and inflation of the currency—which would justify an increase. *Id.* at 44–45.

James Madison favored retaining the ban on increases in compensation. He feared that judges might unduly defer to Congress during legislative consideration of pay raises. *Id.* at 45. In other words, the Convention was unanimous on the overriding concern of protecting the judicial branch against med-

dling with its compensation. Further, the Convention voiced grave concerns about potential compromises in judicial independence if judges faced the prospect of seeking legislative redress of compensation concerns. In sum, the Convention perceived only mischief in the prospect of judges approaching the legislative branch to seek proper compensation. Ultimately, on a vote of 6–2, with one state absent, the Convention permitted increases and forbade all decreases in judicial compensation. *Id.* at 45.

Alexander Hamilton later explained this result:

> It will readily be understood that the fluctuations in the value of money and in the state of society rendered a fixed rate of compensation in the Constitution inadmissible. What might be extravagant today might in half a century become penurious and inadequate. It was therefore necessary to leave it to the discretion of the legislature to vary its provisions in conformity to the variations in circumstances, yet under such restrictions as to put it out of the power of that body to change the condition of the individual [judge] for the worse.

*The Federalist* No. 79, at 473 (Alexander Hamilton) (Clinton Rossiter ed., 1961). According to Hamilton, the Compensation Clause's term "diminished" forbids any action which changes the "condition of the individual [judge] for the worse." *Id.*

James Madison concurred in Hamilton's analysis and extended the coverage of the term "compensation" to all "emoluments" of the judicial office:

> [M]embers of each department should be as little dependent as possible on those of the others for the emoluments annexed to their offices. Were the executive magistrate, or the judges, not independent of the legislature in this particular, their independence in every other would be nominal.

*The Federalist* No. 51, at 321 (James Madison) (Clinton Rossiter ed., 1961). In sum, the Convention considered judicial independence a core value of the Constitution and

adopted a broad protection for it. *See Will,* 449 U.S. at 217–21, 101 S.Ct. at 481–84; *Evans,* 253 U.S. at 252–55, 40 S.Ct. at 552–54.

The text and history of the Compensation Clause do not support the test applied by the trial court. The Supreme Court itself suggested as much in *Will* where, in considering Congress's rescission of judicial pay raises, the Court stated: "the Constitution makes no exceptions for 'nondiscriminatory' reductions." *Will,* 449 U.S. at 226, 101 S.Ct. at 486.

The Government's attempt to limit this statement in *Will* to 'direct diminutions' is unpersuasive. *O'Malley,* distinguished by the *Will* Court as applying a nondiscrimination test, held that nondiscriminatory taxation of a judge *who took office after the tax went into effect* does not violate the Compensation Clause. In such circumstances, the taxation formed part of that judge's compensation scheme from the outset of his tenure. *See O'Malley,* 307 U.S. at 282, 59 S.Ct. at 838.

Nor does *Atkins* provide support for application of a nondiscrimination test to the taxes imposed in this case. In *Atkins,* the United States Court of Claims found that Congress' failure to raise judicial salaries during a period of high inflation was not an actionable diminution under the Compensation Clause, because the plaintiff judges could not show that Congress intended an attack on the judiciary's independence.

However appropriate it may be to consider whether inflation diminishes judicial compensation in a discriminatory fashion, as in *Atkins,* or applies taxes of general applicability to judges taking office after such taxes are effective, as in *O'Malley,* neither the Compensation Clause nor Supreme Court precedent supports applying a non-discrimination test to the imposition of a new tax, even though generally applicable, on sitting judges. As indicated above, the controlling Supreme Court precedent, *Evans,* instructs otherwise. *Evans,* 253 U.S. at 254–55, 40

S.Ct. at 553–54. Under *Evans,* only judges who took office prior to the imposition of the new Social Security taxes suffered a diminution.

### III.

The trial court did not determine whether the Social Security taxes in this case in fact diminished the claimants' compensation. Although noting that inclusion in Social Security might not result in an overall reduction of compensation, *Hatter,* 31 Fed.Cl. at 441 n. 9, the trial court assumed a reduction, noting the decrease at least in take-home pay, for the purpose of resolving the summary judgment motions before it and proceeding to the constitutional issue.

As noted, the term "compensation" extends beyond mere salary, and includes all forms of remuneration attached to the judicial office. Therefore, the claimants' new Social Security retirement benefits, if any, are part of their compensation. These future benefits, however, are not vested in any manner. They thus do not give the claimants a certain entitlement to any offsetting sum. In addition, innumerable individual scenarios could eliminate a claimant's potential Social Security benefit, or greatly reduce the amount of the potential benefit. Because of all the variables that would have to be taken into account in arriving at even a rough estimate of a current discounted value for Social Security benefits that might be payable in the future, it is impossible accurately to weigh these benefits against the taxes withheld from the claimants.

It is certain, however, that the Social Security taxes diminished the claimants' salaries by specific amounts. The reduction was concrete, while the potential future benefit is entirely speculative. A speculative, incalculable future benefit cannot offset a concrete, present reduction.* The Social Security taxes therefore diminished the claimants' compensation in violation of the Compensation Clause.

---

* If the future benefits were calculable and marketable, however, an unconstitutional diminution in

compensation would occur when a present reduction exceeded the present value of the future

## CONCLUSION

Social Security taxes diminish the compensation of Article III judges who took office prior to enactment of the taxes. This court therefore reverses and remands the case for tax refunds or recoveries for the sums improperly withheld from the claimants' salaries.

benefits minus reasonable transaction costs in

## COSTS

Each party shall bear its own costs.

REVERSED and REMANDED.