Judge Terry J. HATTER, Jr., Mary Martin Arceneaux, on behalf of the late Judge George Arceneaux, Jr., Judge Peter H. Beer, Judge Dudley H. Bowen, Jr., Dolores Lee Burciaga, executrix of the estate of Chief Judge Juan G. Burciaga, Judge A.J. McNamara, Judge Harry Pregerson, Judge Raul A. Ramirez, Judge Norman C. Roettger, Jr., Chief Judge Thomas A. Wiseman, Jr., Chief Judge Terence T. Evans, Judge Henry A. Mentz, Jr., Chief Judge Wilbur D. Owens, Jr., Judge Henry R. Wilhoit, Jr., Judge Harold A. Baker and Chief Judge Michael M. Mihm, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 97–5093.

United States Court of Appeals,
Federal Circuit.

Feb. 9, 2000.

Steven S. Rosenthal, Cooper, Carvin & Rosenthal PLLC, of Washington, DC, for

plaintiffs-appellants. With him on the brief was W. Stephen Smith, Morrison & Foerster LLP, of Washington, DC. Of counsel on the brief was Ellen E. Deason, Associate Professor, University of Illinois, College of Law, of Champaign, Illinois.

Jeanne E. Davidson, Deputy Branch Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General, Douglas N. Letter, Appellate Litigation Counsel, David M. Cohen, Director, and Kathleen Moriarty Mueller, Attorney, Appellate Staff.

Before MAYER, Chief Judge, NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, and GAJARSA, Circuit Judges.

### ORDER

IT IS ORDERED THAT:

The judgment of the court entered on August 5, 1999 be reinstated. The opinion reported at 185 F.3d 1356 (Fed.Cir.1999) remains in effect as to parts 1 and 2. The opinion of the court en banc issued today supercedes part 3 of that opinion.

PLAGER, Circuit Judge.

On August 5, 1999, this court issued its opinion and judgment in *Hatter v. United States*, 185 F.3d 1356 (Fed.Cir.1999) (*Hatter VII*).[1] In *Hatter VII* we were called upon to review the decision of the Court of Federal Claims regarding the measure of damages to be awarded to the plaintiff judges who had been subjected to a previ-

ously-declared, *see Hatter v. United States*, 64 F.3d 647 (Fed.Cir.1995) (*Hatter IV*), unconstitutional diminution in compensation, and to review the ruling by the Court of Federal Claims regarding the application of the statute of limitations to these damages claims, *see Hatter v. United States*, 38 Fed.Cl. 166 (1997) (*Hatter VI*).

Subsequently both parties petitioned for rehearing by the panel which issued *Hatter VII*, and, failing that, for rehearing by the court en banc. By Order dated December 20, 1999, we reported the denial of both petitions for rehearing by the panel. With regard to the petitions for rehearing en banc, the court en banc granted the petition of the appellants, Terry J. Hatter, Jr., et al., and denied the petition of the appellee, the United States. In the Order, the judgment of the court in *Hatter VII* was vacated, and the opinion of the court accompanying the judgment was withdrawn with respect to part 3 thereof.[2]

Part 3 of the court's opinion in *Hatter VII* addressed the statute of limitations issue. The question was whether the moneys wrongfully withheld from the judges' monthly paychecks constituted a "continuing claim," as that term is understood in the jurisprudence of this court. In *Hatter VII*, the court concluded that it did not. After full consideration of the petition by the plaintiffs/appellants and the Government's response, the court en banc concluded that, with regard to the statute of limitations issue, the opinion in *Hatter VII* did not give adequate weight to this court's precedents; accordingly, part 3 of the opinion in *Hatter VII* was withdrawn. Following is the en banc court's opinion and judgment regarding that issue.

\*     \*     \*     \*     \*     \*

---

1. The history of this case now involves the following seven decisions: *Hatter v. United States*, 21 Cl.Ct. 786 (1990) (*Hatter I*), *Hatter v. United States*, 953 F.2d 626 (Fed.Cir.1992) (*Hatter II*), *Hatter v. United States*, 31 Fed. Cl. 436 (1994) (*Hatter III*), *Hatter v. United States*, 64 F.3d 647 (Fed.Cir.1995) (*Hatter IV*), *United States v. Hatter*, 519 U.S. 801, 117

S.Ct. 39, 136 L.Ed.2d 3 (1996) (*Hatter V*), *Hatter v. United States*, 38 Fed.Cl. 166 (1997) (*Hatter VI*), and *Hatter v. United States*, 185 F.3d 1356 (Fed.Cir.1999) (*Hatter VII*).

2. The disposition of the vacated judgment in *Hatter VII* is dealt with in a separate Order of the court, issued this date.

3.

As explained in this court's opinion of August 5, 1999, (*Hatter VII*), the judgment of the trial court must be reversed and the matter must be returned to the Court of Federal Claims for determination of damages consistent with that opinion. There remains a disputed issue that needs resolving regarding the application of the statute of limitations. Under the law, a claim against the Government for money damages must be filed within six years of the time the claim first accrues. 28 U.S.C. § 2501. Failure to file within the time period imposed by the statute of limitations means that the Government may raise the statute as an affirmative defense. The six years begins to run when the cause of action accrues.

The judges argue that this case is controlled by what is known as the continuing claim doctrine. Under that doctrine, each time moneys are deducted from the judges' pay and paid into the Treasury of the United States, a new cause of action accrues. Thus, any judge whose salary was or is subject to the unconstitutional imposition can file a claim for each deduction within six years from the time the deduction is made; claims for deductions made longer ago than six years from the time suit is filed would be barred.

The Government argued, and the trial court agreed, that the continuing claim doctrine did not apply to this case. On appeal, this court in its August 5th opinion held with the Government, and affirmed that part of the trial court's judgment. *See Hatter VII*, 185 F.3d. at 1363. As we indicated earlier, on further review and after considering appellants' petition for rehearing and the Government's brief in opposition, the court is of the view that the original opinion did not give sufficient weight to our precedents, and that the Government's arguments are unsound in this respect.

**3.** We are of course bound by the decisions of our predecessor court, until modified or overruled by this court en banc. *See Newell Cos.*

In a 1962 seminal opinion, this court's predecessor, the Court of Claims, addressed the question of how to apply the six year statute of limitations to claims against the Government when the claims involve payments from the Government that were to be made in a series or periodically. *See Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962).[3] Judge Davis, writing for a unanimous court, examined the governing policies and precedents at length, citing over a hundred cases that had been reviewed. Though admitting that not every case was fully consistent in language, and occasionally in outcome, the court identified two basic categories of cases that emerged from its jurisprudence.

The first was those cases in which the repeated government action (or failure to act) resulted in repeated causes of action. The court described those cases as having the following characteristics: (1) the case turned on pure issues of law, or on specific issues of fact which the court was to decide for itself; (2) Congress had not interposed an administrative agency or officer charged with the duty of determining the claimant's eligibility for the money claimed (i.e., there was no discretionary administrative decision at issue), and (3) if fact issues were involved, they were "sharp and narrow." *Id.* 310 F.2d at 384–85.

The cases the court had in mind were the pay cases—those in which the claimant was suing "for additional pay at a higher grade, or claiming greater compensation (under a statute or regulation) than the claimant was receiving, or seeking special statutory increments or allowances, etc." *Id.* at 384. In such a case, when "no administrative agency has been set up to decide the claim, and the court passes de novo on all issues of law and fact – the 'continuing claim' doctrine is wholly appropriate and in accord with the general juris-

*v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir.1988).

prudence in this country on the statute of limitations." *Id.* at 385. The court went on to note that "[u]nder those general principles the cause of action for pay or compensation accrues as soon as the payor fails or refuses to pay what the law (or the contract) requires; ... [a]nd where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought." *Id.*

The court contrasted those cases with the cases in the second category, cases "in which the cause of action does not accrue until after a determination entrusted by Congress to an administrative official... In those instances, the claim does not accrue until the executive body has acted (if seasonably asked to act) or declines to act." *Id.* The general rule here is that "in appropriate cases conditions precedent to the accrual of a cause of action can be established by statute, contract, or common law, and that where such a condition precedent has been created the claim does not ripen until the condition is fulfilled." *Id.* at 386. The kinds of cases the court listed here typically involved those in which a statute required a demand upon an executive official before payments were due. *See id.* at 386.

As the court saw it, the touchstone between the two categories was that " 'continuing claims' ... are independent of administrative determination[,] and those other claims [are] dependent on prior administrative evaluation." *Id.* at 387. Applying this principle to the case before it, the court concluded that a claim for entitlement to disability retirement pay, of the type requiring discretionary action by a board or executive official, is not a continuing claim, but accrues as a whole, once it accrues. On the other hand, other types of pay claims not dependent on a discretionary finding – including claims for increased retirement pay because of new legislation, etc. – are continuing claims. *See id.* at 396.

In the case before us, suit was brought not as a class action but on behalf of the individually named judges. In that regard, there are distinct causes of action arising under two different statutes. The Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, imposed the Hospital Insurance portion of the Social Security tax on federal judges effective January 1, 1983; the Old Age and Survivors Disability Insurance portion of the Social Security tax was imposed on federal judges by the Social Security Amendments of 1983, Pub.L. No. 98–21, and was effective January 1, 1984.

In both cases, each month after the Acts became effective the Government automatically deducted from the judges' salary checks the amount, calculated by formula, that was due under the tax. No administrative officer or tribunal was given discretion to decide whether the judges were entitled not to pay the tax, or whether the judges had to pay only some of it. The question of whether the monthly tax deduction would occur was determined as a pure issue of law – all judges were to pay; and the only factual issue was to determine the judges' gross salary as provided by Congress from time to time, against which the formula would be applied. Under the analysis given to us by the Court of Claims in *Friedman*, there is merit to the argument of the judges that these periodic deductions, which have been ruled to have been unlawful, should be treated as a continuing claim.

The Government, in its Opposition to Appellants' Petition for Rehearing En banc, argues that the continuing claim doctrine does not apply since plaintiffs' claims are not inherently susceptible to being divided into a series of independent and distinct wrongs. This is because the continued withholding of these taxes from plaintiffs' judicial salaries "is simply the ongoing 'damages resulting from the single earlier alleged [constitutional] violation by the government.' " Opposition at 4, quoting *Brown Park Estates–Fairfield Dev.*

Co. v. United States, 127 F.3d 1449, 1457 (Fed.Cir.1997).

The Government relies heavily on *Brown Park*, as well as another recent case in this court, *Hart v. United States,* 910 F.2d 815 (Fed.Cir.1990). *Brown Park* involved a suit by low-income housing providers against the Department of Housing and Urban Development ("HUD"), alleging breach of their housing assistance payments contract with HUD. The plaintiffs complained that HUD had failed to make rent adjustments in accordance with their contracts. Their main contention was that "HUD has breached its contracts with the Plaintiffs because, in the absence of any comparability studies, it failed to pay full rental adjustments based on the [Automatic Annual Adjustment Factor in the contracts]." *Brown Park* at 1453.

The question on appeal was whether plaintiffs could ward off the bar of the six year statute of limitations by relying on the continuing claim doctrine. This court cited the Court of Claims decision in *Friedman,* and pointed out the distinction drawn there between claims which fall within the continuing claim doctrine, such as periodic pay claims, and claims which do not. *See id.* at 1456.

In describing the latter category, this court spoke in terms of "a single distinct event, which may have ill effects later on," as a wrong that does not qualify under the continuing claim doctrine. *Id.* Seizing upon that language, and the language above quoted, the Government argues that the imposition of the taxes at issue in 1983 and 1984 constituted such a single distinct event, even though the events continued to have ill effects over the years since.

■ But that language from *Brown Park* is simply descriptive of the type of case that falls outside the continuing claim doctrine. To determine whether a case falls inside or outside of that description, we return, as we must, to the governing considerations set out in *Friedman,* specifically, has Congress entrusted an adminis-

trative officer with the determination of the claimant's entitlement (in *Brown Park* Congress had so entrusted the determination to HUD); does the case involve significant factual determinations, or does it turn on pure issues of law or specific facts which the court is to decide for itself (in *Brown Park* the facts in dispute involved complex calculations of area market rents that were within the expertise of HUD); and does the case call upon the court to address broad concepts rather than resolve sharp and narrow factual issues (*Brown Park's* resolution turned on such issues as the "material differences between the rents charged for assisted and comparable unassisted units"). This court concluded, consistent with governing precedent, that *Brown Park* did not involve a continuing claim for statute of limitations purposes; the case thus lends no support to the Government's case here.

Similarly, the other case on which the Government places heavy reliance, *Hart v. United States,* is inapposite. *Hart* involved a claim by the widow of a retired military member, in which she alleged that her deceased husband's election not to participate in the survivors benefit program was invalid because she had not been given notice as required by statute. She sued for annuity benefits, but filed her claim more than six years after her husband's death, the event under which her entitlement vested.

This court held that "[b]ecause all events necessary to her benefits claim had occurred when her husband died, we conclude that plaintiff's claim for ... annuity benefits is not a 'continuing' claim." *Hart,* 910 F.2d at 818. Again, it is readily apparent that this was a case in which Congress has charged an administrative agency with making a determination whether she qualified for an annuity, and how much, and the case did not turn on an issue of law but on disputed facts as to whether and when she received notice. The court correctly discerned that under the *Friedman* precedent, this case fell

over the line into the second category, that of non-continuing claim cases.

■ Neither *Brown Park* · nor *Hart* questioned the authority of *Friedman,* nor could they, since neither was decided by this court en banc. We find the analysis provided by Judge Davis in the *Friedman* opinion to be a useful and effective mechanism for distinguishing between cases when the Government has failed to make a series of payments claimed to be due (or, as here, has deducted or withheld pay), and the question is whether there is a seminal event that constitutes one cause of action, or whether each wrongful deduction or refusal to pay constitutes a separate cause of action. Statements such as "all necessary events had occurred," or "the claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs," may be accurate ways of describing the events after-the-fact, but they do not contribute to the analysis. The Government's reliance on such statements, rather than focusing on the *Friedman* factors, leaves us unpersuaded that the Government's view should prevail. We conclude that, for the reasons stated above, the case before us falls comfortably on the side of the line governed by the continuing claim doctrine.

## CONCLUSION

The judgment of the trial court with regard to the application of the statute of limitations issue must be, and is, reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

*REVERSED* AND *REMANDED.*