**Slip Op. 01-144**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                  :

SWISHER INTERNATIONAL, INC.,      :

           Plaintiff,          :

                        v.        :      Court No. 95-03-00322

UNITED STATES,               :

           Defendant.      :
_____

_____
                                    :

SONY ELECTRONICS, INC., and,     :
ARBON STEEL & SERVICE CO., INC.,  :

           Plaintiffs,        :

                        v.        :      Court No. 98-07-02438

UNITED STATES,              :

           Defendant.      :
_____

[Summary judgment for defendant.]

                                              Dated: December 11th, 2001

     McKenna & Cuneo, L.L.P. (Peter Buck Feller, Daniel G. Jarcho, and Joseph F. Dennin) for plaintiff Swisher.

     Galvin & Mlawski (John J. Galvin) for plaintiffs Sony Electronics, Inc., and Arbon Steel & Service Co., Inc.

     Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeanne E. Davidson, Todd M. Hughes, and Jeffrey A. Belkin), Richard McManus Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

Coudert Brothers (Steven H. Becker and Paul A. Horowitz) for amici HMT Plaintiffs' Steering Committee.

Baker & McKenzie (Susan G. Braden, William D. Outman, Kevin M. O'Brien, Teresa A. Gleason, Michael E. Murphy) for amicus IBM.

# OPINION

**RESTANI, Judge:** This action is before the court on cross-motions for summary judgment pursuant to USCIT R. 56. The sole issue is whether plaintiffs are entitled to prejudgment interest on fees paid under the export provision of the Harbor Maintenance Tax ("HMT").

## Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1581(a) for claims based on protest of refund denials. See Swisher Int'l, Inc. v. United States, 205 F.3d 1358, 1364 (Fed. Cir.2000), cert. denied, 581 U.S. 1036 (2000). The court has jurisdiction under 28 U.S.C. 1581(i) for claims not arising from administrative proceedings. See United States Shoe Corp. v. United States, 114 F.3d 1564, 1570 (Fed. Cir. 1997).

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(c).

### Background

The HMT is an ad valorem tax on commercial cargo involved in "any port use." See 26

U.S.C. § 4461(a) (1996).  In United States Shoe Corp. v. United States, 19 CIT 1284, 1289, 907

F. Supp. 408, 413 (1995), the court held that the HMT, as applied to exports, violated the Export

Clause of the Constitution.  See U.S. Const., Art. I, § 9, cl. 5.  The court later awarded judgment

for plaintiffs in the form of a refund of the principal amount paid  "together with interest."  See

United States Shoe Corp. v. United States, 19 CIT 1413, 1413, 924 F. Supp. 1191, 1191 (1995).

The court subsequently noted that the question of interest was "not a matter without

controversy and it cannot be resolved as a simple clerical matter."  U.S. Shoe, 20 CIT 206, 207

(1996).   Although the court called for additional briefing on the question of whether exporters

may recover interest, the U.S. Customs Service ("Customs") filed a notice of appeal from the

court's earlier decision on the constitutional issue.   As a result, the court's final order awarding

interest in U.S. Shoe was not addressed on appeal.  The CIT's decision holding the HMT

unconstitutional was affirmed by the Federal Circuit, 114 F.3d 1564 (Fed. Cir. 1997), and by the

U.S. Supreme Court, 523 U.S. 360 (1998).

After the Supreme Court's decision in U.S. Shoe, the CIT developed a test case

procedure to resolve the remaining issues surrounding the HMT, including the award of

prejudgment interest.  See IBM v. United States, No. 94-10-00625, slip op. 98-78, WL 325156

(Ct. Int'l Trade June 17, 1998), was selected as the test case to determine whether prejudgment

interest should be awarded on HMT refunds.  In IBM, the CIT entered judgment for plaintiff,

ordered a refund of the principal paid, and adopted its prior position awarding interest.  See id.

On appeal, the Federal Circuit reversed the CIT's award of interest, holding that the statutory

provisions in question did not provide the necessary authorization to award interest. See IBM v. United States, 201 F.3d 1367, 1369 (Fed. Cir. 2000), cert. denied, 531 U.S. 1185 (2001).

Various plaintiffs filed motions seeking additional proceedings on the issue of prejudgment interest. Because the Federal Circuit had only addressed statutory authorization for interest in IBM, plaintiffs Sony Electronics, Inc., and Arbon Steel & Service Co. Inc. ("Sony/Arbon") were granted leave to prosecute a complaint asserting various constitutional bases for the award of prejudgment interest.[1] Sony/Arbon argues that plaintiffs are entitled to interest under the Export Clause, the Takings Clause of the Fifth Amendment, the Fifth Amendment Due Process Clause, and under rights guaranteed by the Ninth and Tenth Amendments. Swisher International, Inc. ("Swisher") subsequently filed a motion for entry of judgment in which Swisher asserts similar constitutional claims as well as a statutory claim under 19 U.S.C. § 1505(b),[2] that Swisher argues was not addressed by the Federal Circuit in IBM.

### Discussion

The federal government is immune from an award of interest absent an express waiver of sovereign immunity. See Library of Congress v. Shaw, 478 U.S. 310, 311 (1986); see also IBM, 201 F.3d at 1370. "Apart from constitutional requirements, in the absence of specific provision by contract or statute, or 'express consent ... by Congress,' interest does not run on a claim against the United States." Shaw, 478 U.S. at 317 (quoting United States v. Louisiana, 446 U.S.

---

[1] Sony Electronics, Inc., v. United States was consolidated with Arbon Steel & Service Co. Inc., v. United States; No. 98-10-02987.

[2] The "new" statutory argument is limited to the claims falling under 28 USC § 1581(a), administrative protest denial jurisdiction.

253, 264-265 (1980), quoting Smyth v. United States, 302 U.S. 329, 353 (1937)).  Swisher first

argues that 19 U.S.C. § 1505(b) provides the express consent necessary to award Plaintiffs

prejudgment interest here.

**A.      Section 1505(b)**

The Harbor Maintenance Tax does not expressly authorize the payment of interest on

HMT refunds.  See IBM, 201 F.3d at 1371.   Express consent may, however, be found

"elsewhere."  See id.   (analyzing customs and internal revenue tax provisions to determine

whether express consent exists).  26 U.S.C. § 4462(f) requires that all administrative and

enforcement provisions of customs laws and regulations apply to the HMT as if it were a

customs duty.  See IBM, 201 F.3d at 1371 (". . . even though the HMT is codified as an excise

tax and is part of the Internal Revenue Code, Congress intended the administration and

enforcement of the tax to be treated as if the tax was a customs duty.").  Because the HMT is

treated as a customs duty, Swisher argues that the express consent necessary to award interest

can be found in 19 U.S.C. § 1505(b), the administrative provision regarding payment and refund

of customs duties.

Section 1505(b) provides, in part, for the refund of excess duties, with interest, upon

liquidation or reliquidation.  19 U.S.C. § 1505(b).[3]  Swisher argues that because § 1505(b)

---

[3]  19 U.S.C. § 1505(b) reads:

> The Customs Service shall collect any increased or additional duties and fees due,
> together with interest thereon, or refund any excess moneys deposited, together with
> interest thereon, as determined on a liquidation or reliquidation.  Duties, fees, and interest
> determined to be due upon liquidation or reliquidation are due 30 days after issuance of
> the bill for such payment.  Refunds of excess moneys deposited, together with interest
> thereon, shall be paid within 30 days of liquidation or reliquidation.

provides for an award of interest on refunds of excess monies deposited to pay duties, it should be construed to allow for an award of interest on refunds of the monies deposited to pay the HMT, which must be treated as duty under § 4462. The principal problem is that § 1505(b) is not designed to apply to the HMT.

The interest provision in §1505(b) applies where a refund has been determined after a liquidation or reliquidation. "It is clear in order for Customs to be liable for interest, a refund must be 'determined on a liquidation or reliquidation.' Indeed, under the statute it is a liquidation or reliquidation which triggers interest liability." Dal-Tile Corp. v. United States, 116 F. Supp. 2d 1309, 1314 (Ct. Int'l Trade 2000); see also Travenol Labs., Inc. v. United States, 118 F.3d 749 (Fed. Cir. 1997), 753 n. 5 (the "event that gives rise to interest liability is liquidation or reliquidation"); Novacor Chem. Inc. v. United States, 171 F.3d 1376, 1382 (Fed. Cir. 1999) (reliquidation "is the triggering event in a dispute surrounding an award of interest").

Under 19 C.F.R. § 159.1, liquidation is defined as the final computation of the duties or drawback accruing on an entry. "Liquidation (or reliquidation), therefore, determines whether there has been an overpayment or underpayment, and thus defines the basis upon which interest might be due." Travenol, 118 F.3d at 753. There has been no liquidation or reliquidation to trigger § 1505(b) here. Swisher argues, however, that Customs' initial denial of its refund request was effectively a liquidation and a new determination is equivalent to a reliquidation, thus triggering the interest provisions of § 1505(b), and distinguishing its procedural posture from that of the IBM plaintiffs, who did not seek an administrative decision from Customs.

In IBM, the court rejected the argument that language regarding "liquidation" could be interpreted to include other actions by Customs. 201 F.3d 1367. The court looked to the actual purpose of § 1505(c),[4] which describes specifically how interest is determined:

> On its face, the statute contemplates an entirely different factual scenario from the one before us. However, amici suggest that by substituting the exporter for the "importer of record," the HMT quarterly report for the "entry," and Customs' acceptance of the HMT payment for "liquidation," we can apply § 1505(c) to provide interest on HMT refunds. We are without power to rewrite a Congressional enactment to make it fit a case for which it was clearly not intended, no matter how compelling the case, particularly in light of the Supreme Court's mandate that Congress must expressly consent to an award of interest. See Shaw, 478 U.S. at 314. Accordingly, § 1505(c) does not authorize interest on HMT refunds.

IBM, 201 F.3d at 1374 (emphasis added). For precisely the same reason, this court is prohibited from rewriting § 1505(b).

The basic purpose of liquidation and reliquidation is to finalize duties owed, allow parties to protest the classification or valuation of goods and allow a remedy for both underpayment and overpayment. See Travenol, 118 F.3d at 753. Swisher wants HMT payments to be equated to customs duties, but does not and could not argue that it overpaid an otherwise valid customs duty because its goods were improperly classified or valued and is, therefore, entitled to a refund of

---

[4] 19 U.S.C. § 1505(c) reads as follows:

Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest or, in a case in which a claim is made under section 1520(d) of this title, from the date on which such claim is made, to the date of liquidation or reliquidation of the applicable entry or reconciliation. The Secretary may prescribe an alternative mid-point interest accounting methodology, which may be employed by the importer, based upon aggregate data in lieu of accounting for such interest from each deposit data provided in this subsection.

the difference including interest. Such a claim would be properly asserted under § 1505(b).

Instead, Swisher argues that any and all HMT payments should be construed as overpayments of

an invalid customs duty, and, therefore, it is entitled to a refund of the entire amount with

interest, even though Customs did not improperly classify or value goods.[5] This statute, like

§ 1505(c), contemplates an entirely different factual scenario than the one before the court. It

seems clear that § 1505(b) was not created to provide recourse for an unconstitutional tax but

was merely intended to remedy mistaken customs classifications and valuations. The court

would have to stretch the meaning of its language in a way not permitted by the court in <u>IBM</u> to

provide the remedy that Swisher suggests, and such judicial manipulation was precisely the

focus of <u>IBM</u>.[6]

Moreover, if the court were to find that HMT refund decisions were the functional

equivalent of a liquidation, the court would not only rewrite § 1505(b), but would necessarily

alter the meaning of § 1505(c) as well. Section 1505(c) defines the period during which interest

runs when a liquidation or reliquidation has determined that a refund is due. The period is

between the date of the <u>duty</u> <u>deposit</u> until the date of <u>entry</u> <u>liquidation</u> or <u>reliquidation</u>. Because

the two sections work hand in hand, the meaning of § 1505(c) would also change to read that the

time of payment of the HMT, like the time of deposit of duties, marks the time at which interest

---

[5] While certain "fees" may be a liquidated and refunded under § 1505(b), it is clear that these are not HMT payments but other fees paid by importers in addition to duties that are part of the duty liquidation process. Swisher argues that it is the equivalence of "customs duties" and HMT, not these miscellaneous fees and HMT, that is required by § 4462(f).

[6] In <u>IBM</u>, the court recognized that 26 U.S.C. § 4462(f) provided for the HMT payments to be treated as customs duties for administrative and enforcement purposes, but still declined to substitute new terms for the statutory interest language in order to allow interest. <u>See</u> <u>IBM</u>, 201 F.2d at 1371-74.

begins to run.  The Federal Circuit has plainly rejected such that interpretation of § 1505(c).  See

IBM, 201 F.3d at 1374.[7]   Whether or not a refund denial is like an erroneous liquidation, the

HMT payment is not a "duty" "deposit" paid on an "entry" by an "importer of record."  Because

the court is prohibited from rewriting § 1505(c), it is necessarily prohibited from rewriting

§ 1505(b).

Federal courts are required to strictly construe waivers of sovereign immunity.  Shaw,

478 U.S. at 318.

> "[T]here can be no consent by implication or by use of ambiguous language. Nor can an
> intent on the part of the framers of a statute or contract to permit the recovery of interest
> suffice where the intent is not translated into affirmative statutory or contractual terms.
> The consent necessary to waive the traditional immunity must be express, and it must be
> strictly construed."

 United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 659 (1947).  Accordingly, the court

must find against awarding interest even where there is a compelling public policy to do so.

Shaw, 478 U.S. at 318. This principle and the holding in IBM compel the court to find that §

1505(b) does not provide the express waiver of sovereign immunity necessary to award

prejudgment interest on HMT export payments.


**B.      Export Clause**

In Shaw, the Supreme Court acknowledged that "constitutional requirements" may

permit the award of interest against the federal government in the absence of an express statutory

or contractual waiver.  478 U.S. at 317.  Plaintiffs argue that because the Export Clause is an

"unqualified prohibition" on export taxes, see U.S. Shoe, 523 U.S. at 368, the remedy for a

violation of the Export Clause necessarily includes a refund with interest.  In Cyprus Amax Coal

---

[7] HMT payments are not "deposits" within the meaning of § 1505(c), which become final
upon liquidation.

Co. v. United States, 205 F.3d 1369, 1373 (Fed Cir. 2000), the court recognized that the Export

Clause "provides a cause of action with a monetary remedy," without independent statutory

authorization. That does not equate, however, to a waiver of sovereign immunity for interest

claims.

The Just Compensation Clause of the Fifth Amendment, also referred to as the Takings

Clause, is the only provision of the Constitution that the U.S. Supreme Court has found to

contain a clear waiver of sovereign immunity authorizing prejudgment interest. See, e.g., Shaw,

478 U.S. at 317; Smyth, 302 U.S. at 353; U.S. v. Alcea Band of Tillamooks, 341 U.S. 48, 49

(1951); Boston Sand & Gravel v. U.S., 278 U.S. 41, 47 (1928); Tillson v. U.S., 100 U.S. 43, 47

(1879). In Shaw, the Supreme Court implied that this "constitutional requirement" exception

arises only in a taking under the Fifth Amendment. 478 U.S. 310, 317 n.5 (cites omitted). In

fact, Plaintiff Sony quotes Merchants Matrix Cut Syndicate, Inc. v. U.S., 284 F.2d 456 (7th Cir.

1960) for the proposition that "with the exception of just compensation claims under the Fifth

Amendment, interest is not recoverable against the United States in the absence of an express

provision to the contrary." As a matter of first impression, Plaintiffs ask the court to recognize a

new waiver of sovereign immunity under the Export Clause.

Plaintiffs cite to Hatter v. United States, 38 Fed. Cl. 166, 182 (1997) ("Hatter VI"), for

the proposition that the court may look beyond the Just Compensation Clause to find a

constitutional waiver of sovereign immunity. In Hatter v. United States, 64 F.3d 647 (Fed.

Cir.1995) ("Hatter IV"), the Federal Circuit held that assessing a social security tax for the first

time on sitting federal judges gave rise to an action under the Compensation Clause of Article

III. The Federal Circuit remanded the matter to the Court of Federal Claims to calculate

damages. On remand, the Court of Federal Claims held that the remedy included interest because Article III, much like the Just Compensation Clause of the Fifth Amendment, created an affirmative requirement to pay and, therefore, the traditional rule against interest did not apply. See Hatter VI, 38 Fed. Cl. at 182-83 . Plaintiffs argue that because Swisher's claim, like Hatter VI, arises directly under the Constitution, the Export Clause requires an award of interest. The Federal Circuit, however, never addressed on appeal whether the Compensation Clause contained the necessary waiver of sovereign immunity and, therefore, there is no binding precedent before this court expanding the traditional rule.[8] Even if the court were to accept Hatter VI's view of the Compensation Clause of Article III, Hatter VI does not provide the answer here.

Interest does not attach merely because a claim arises under the Constitution. It is the unique language of the Just Compensation Clause of the Fifth Amendment which requires prejudgment interest. See, e.g., Monangahela Navigation Co. v. United States, 148 U.S. 312, 325-26 (1893). While the Export Clause may be interpreted as money-mandating, see Cyprus Amax, 205 F.3d at 1373, it does not contain express language which requires that the

---

[8] The 1997 Court of Federal Claims' decision in Hatter was one of many. See Hatter v. United States, 21 Cl.Ct. 786 (1990) ("Hatter I"), rev'd, 953 F.2d 626 (Fed.Cir.1992) ("Hatter II"), on remand, 31 Fed.Cl. 436 (1994) ("Hatter III"), rev'd, 64 F.3d 647 (Fed.Cir.1995) ("Hatter IV"), aff'd, 519 U.S. 801 (1996) ("Hatter V"), on remand, 38 Fed.Cl. 166 (1997) ("Hatter VI"). After the Court of Federal Claims awarded interest in Hatter VI, the Federal Circuit reversed and remanded the matter on a different issue. See Hatter v. U.S., 85 F.3d 1356 (Fed Cir. 1999) ("Hatter VII"). The Hatter VII court did not address interest. That decision was later vacated and the opinion withdrawn so that the court could hear the matter en banc. See Hatter v. United States, 199 F.3d 1316 (Fed. Cir. 1999) ("Hatter VIII"). The Federal Circuit, without addressing the award of interest, again reversed the Court of Federal Claims on other grounds. See Hatter v. United States, 203 F.3d 795 (Fed. Cir. 2000) ("Hatter IX"), aff'd in relevant part, 532 U.S. 557 (2001) ("Hatter X"). In the course of Hatter's complicated history, the issue of interest was never addressed beyond Hatter VI and, therefore, was never the subject of any substantive appellate discussion.

government provide "just" compensation. It is the meaning embodied in the term "just compensation" which creates the requirement that the government provide a "full and exact equivalent" in the form of interest. See Olson v. United States, 292 U.S. 246, 254-55 (1934). If the compensation clause of Article III of the Constitution requires payment of interest, it is because that particular clause contains an affirmative requirement for undiminished and timely paid compensation. The Export Clause merely contains a prohibition against government action. The remedy for the prohibition may take various forms; it is not an absolute and affirmative requirement to restore Plaintiffs to their prior position. It is this affirmative requirement that fully waives sovereign immunity under the Just Compensation Clause of the Fifth Amendment and perhaps under Article III. Because the Export Clause does not contain that affirmative requirement, the court cannot construe the clause as the full and express waiver of sovereign immunity necessary to allow prejudgment interest.

**C.      Fifth Amendment Taking**

Plaintiffs argue that the imposition of the HMT on exports was a taking under the Fifth Amendment and, therefore, the traditional rule against interest does not apply. The Takings Clause of the Fifth Amendment guarantees that private property shall not be taken for public use without just compensation. See U.S. Const. amend. V. A Fifth Amendment takings claim requires a two-step analysis. First, Plaintiff must establish that it possesses a compensable property interest. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992); Kaiser Aetna v. U.S., 444 U.S. 164, 179-180 (1979). Plaintiff must then show that the United States, through a valid act of Congress, took that private property interest for public use without just compensation. See Short v. U.S., 50 F.3d 994, 1000 (Fed. Cir. 1995).

To satisfy the first requirement, Plaintiffs argue that its invalidly extracted money is a property interest protected under the Fifth Amendment citing Board of Regents v. Roth, 408 U.S. 564, 571-72 (1972) ("[T]he property interests protected by procedural due process extend beyond actual ownership of real estate, chattels, or money."). Generally, taxation is not considered to be a taking because the monies paid are not a recognizable protected property interest. See, e.g., United States v. Sperry Corp., 493 U.S. 52, 53 (1989) (holding that a deduction of a tribunal user fee from a settlement award is not a taking); Commercial Builders v. Sacramento, 941 F.2d 872, 876 (9th Cir. 1991) (holding that a purely financial exaction does not constitute a taking); Coleman v. C.I.R., 791 F.2d 68, 70 (7th Cir. 1986) ( holding that taxes are not takings, unless the Government tries to "achieve through special taxes what the Takings Clause of the Fifth Amendment forbids if done directly."); Atlas Corp. v. United States, 895 F.2d 745, 756 (Fed. Cir. 1990) ("Requiring money to be spent is not a taking of property"); Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29, 40 (2000) (same); Branch v. United States, 69 F.3d 1571, 1576 (Fed. Cir. 1995) (rejecting the argument that a federal statute constituted a taking, "because the property allegedly taken was money).

A limited number of courts have suggested that a tax may be a taking, but only if the tax is confiscatory. "Levying of taxes does not constitute a Fifth Amendment taking unless the taxation is so 'arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property.'" Quarty v. United States, 170 F.3d 961, 969 (9th Cir. 1999) (quoting Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 24 (1916)). To prove that the tax HMT is confiscatory, Plaintiffs must establish that the tax was not reasonably related to a substantial public purpose. See Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 127 (1978).

An act intended to fund the maintenance of this country's harbors is clearly related to a substantial public purpose and, therefore, the HMT on exports was not confiscatory.

Plaintiffs argue that an unconstitutional tax is an ipso facto taking. Plaintiffs quote the concurring opinion of Justice Scalia in Reynoldsville Casket Co. v. Hyde: "if a plaintiff seeks the return of money taken by the government in reliance on an unconstitutional tax law, the court ignores the tax law, finds the taking of the property wrongful, and provides a remedy." 514 U.S. 749, 760 (1995). (Emphasis in Plaintiff's Brief.). Plaintiffs reliance on Reynoldsville Casket is misplaced. The majority opinion recognized that the remedy for an unconstitutional tax is not, as Plaintiffs would argue, the same as if a taking had occurred but depends upon the underlying factor that rendered the tax unconstitutional. See id. at 755 (citing McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18 (1990)). In McKesson, 496 U.S. at 51-52, the Supreme Court recognized that the remedy for an unconstitutional tax may not even be the repayment of the tax, but in the case of a discriminatory tax may involve the levying of an additional, offsetting tax. If, as Plaintiffs suggest, an unconstitutional tax is an ipso facto taking, the remedy would be limited to just compensation, and could not in some cases be cured by the levy of additional taxes. While it is clear that a remedy involving an additional tax is inapplicable here, it is equally clear that the remedy for an unconstitutional tax is not necessarily the remedy for a taking. The flexibility of remedy supports the argument that payment of a tax, unconstitutional or not, is not a property interest protected under the Takings Clause of the Fifth Amendment.

Even if Plaintiffs' unconstitutionally exacted money was a recognized protected property interest, Plaintiffs fail to satisfy the second step of the takings analysis. The HMT does not

constitute a taking because the HMT was not a valid exercise of Congress' power of eminent domain. The HMT on exports was an unauthorized use of Congress' otherwise valid power to tax under Article I of the Constitution, not a valid exercise of the government's power of eminent domain. See U.S. Shoe, 523 U.S. 360. "[T]he power of taxation should not be confused with the power of eminent domain. Each is governed by its own principles." Houck v. Little River Drainage Dist., 239 U.S. 254, 264 (1915). Because Congress was not exercising its power of eminent domain in passing the HMT, a takings analysis is inappropriate.

Moreover, the HMT was not a valid act of Congress. "[A] taking claim must be premised upon a government action that is either expressly or impliedly authorized by a valid enactment of Congress." Dureiko v. United States, 209 F.3d 1345, 1359 (Fed. Cir. 2000). Plaintiff's entire argument is premised on the notion that the HMT was an invalid, unconstitutional act. Plaintiff cannot now argue that the HMT was simultaneously a valid exercise of the federal government's power of eminent domain. Because the HMT was not a valid exercise of Congress' power of eminent domain and because the monies paid are not a property interest protected under the Fifth Amendment, the HMT is not subject to a takings analysis. Consequently, Plaintiffs are not entitled to interest under the Takings Clause of the Fifth Amendment.

**D.      Fifth Amendment Due Process**

Sony/Arbon argues that imposition of the HMT on exports was a violation of Plaintiffs' substantive due process rights. The Fifth Amendment of the U.S. Constitution states that no person shall be deprived of life, liberty or property without due process of law. See U.S. Const. amend. V. The standard of review governing a due process challenge to a taxing statute is

"whether the taxing statute is so arbitrary and capricious as to amount to a denial of due process." Pledger v. C.I.R., 641 F.2d 287, 292 (5th Cir. 1981). A tax will not constitute a deprivation of property under the Due Process Clause unless it is so arbitrary as to be confiscatory. See Quarty, 170 F.3d at 969 (quoting Brushaber, 240 U.S. at 24). Plaintiffs argue that an unconstitutional tax is per se confiscatory.

In Sperry, 493 U.S. at 65, the Court held that a Congressional act is not a violation of the Due Process Clause if it is rationally related to a legitimate public purpose. The HMT was intended to finance the general maintenance of U.S. ports. S. Rep. No. 99-126, at 9-10 (1985), reprinted in 1986 U.S.C.C.A.N. 6639, 6646-47. Funding the maintenance of U.S. ports by charging those parties that use the ports is an otherwise valid exercise of Congress' power to tax for a legitimate public purpose. While one provision of the HMT was found unconstitutional, that is insufficient to render the tax so arbitrary and capricious as to violate Plaintiffs' rights under the Due Process Clause of the Fifth Amendment.

Even if the HMT did violate the Due Process Clause, Plaintiffs fail to provide any support for their claim that an award of interest is constitutionally required to remedy such a violation. "[N]o language in the [Fifth Amendment Due Process Clause] itself requires the payment of money damages for its violation." Murray v. U.S., 817 F.2d 1580, 1583 (Fed. Cir. 1987). Even though a tax is declared unconstitutional pursuant to the Due Process Clause, the remedy does not necessarily include a refund, McKesson, 496 U.S. at 51, much less interest. As a result, Plaintiffs' Due Process claims fail.

**E.      Ninth and Tenth Amendments**

Plaintiffs Sony/Arbon lastly argue that the HMT need not contain a waiver of sovereign immunity because the doctrine of sovereign immunity does not apply here.  Citing North Am. Co. v. SEC, 327 U.S. 686, 704-05 (1946), Plaintiffs argue that the United States is not an "absolute sovereign" and, more importantly, that Congress was acting outside of its sovereign role when it passed the unconstitutional HMT on exports.  Plaintiffs argue that Congress' passage of the HMT on exports was, in fact, an exercise of "a different and forbidden power" that infringed upon rights protected under the 9th and 10th Amendments.

The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  In United States v. Choate, 576 F.2d 165, 181 (9th Cir. 1978), the court held that the rights protected by the Ninth Amendment are those that are so basic and fundamental and deeply rooted in our society as to be "essential rights" but which, nevertheless cannot find direct support elsewhere in the Constitution (quoting Griswold v. Connecticut, 381 U.S. 479, 488-89 (1965)).  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited to it by the states, are reserved to the states respectively or to the people."  U.S. Const. amend. X.  Plaintiffs cite to Kansas v. Colorado, 206 U.S. 46, 90 (1907), for the proposition that the principal purpose of the Tenth Amendment was to reserve to the people all power not granted to the federal government or to the states.   Plaintiffs reason that "the sovereign power to tax exports remains the exclusive province of the 'sovereign People' of this Nation under the Ninth and Tenth Amendments," Plaintiff Sony's Brief at 15. (emphasis in original), and therefore, the HMT on exports was not imposed by the federal government in its capacity as a sovereign.

Taken to its logical conclusion, Plaintiffs argue that any act passed by Congress which is later declared unconstitutional would automatically be a violation of the Ninth and Tenth Amendments because it was beyond Congress' power to pass in the first place. Plaintiffs cite no support for this proposition. In addition, Plaintiffs fail to identify any case that provides for prejudgment interest as a remedy for a Ninth or Tenth Amendment violation. Accordingly, the court finds that Plaintiffs are not entitled to interest under the Ninth or Tenth Amendment.

### **Conclusion**

The court finds that Plaintiffs are not entitled to prejudgment interest under § 1505(b), the Export Clause, the Takings Clause, the Due Process Clause of the Fifth Amendment, or the Ninth and Tenth Amendments. The court grants summary judgment for Defendant.

_____
Jane A. Restani
JUDGE

Dated: New York, New York

This 11th day of December, 2001.